## ENGLE v. YORKS.

1. Upon appeal, upon questions of both law and fact, to the circuit court from the action of the probate court in the appointment of a guardian, the circuit court should retry the case and pronounce judgment.

2. In such case, the circuit court is not confined to simply affirming, reversing, or modifying the judgment of the probate court, as when the appeal is upon "questions of law alone."

3. When, upon such trial in the circuit court, questions of fact are submitted to a jury, whose answers, although only advisory, are referred to in the judgment of the court as having been "duly considered," without any intimation of dissatisfaction with them, and no other or different findings are found in the record, and it is not claimed that any such were made or that findings were waived, it will be understood that the judgment was based upon such findings of the jury,

4. In such case, the question for review in this court is, could the judgment of the circuit court properly follow the findings so made?

5. In this case, held, that the facts so found by the jury did not justify or allow the judgment rendered by the court.

(Syllabus by the Court. Opinion filed July 27, 1895.)

Appeal from circuit court, Brown county. Hon. A. W. CAMPBELL, Judge.

Mary H. Yorks, having been appointed guardian for Urso A. Engle, a minor, George S. Engle appealed to the circuit court. The appointment was there affirmed, and appellant appeals. Reversed.

The facts are stated in the opinion.

*H. H. Potter* and *L. W. Crofoot* for appellant.

Guardianship proceedings are summary and special, as well as statutory; there must be a decree adjudging the statutory unsuit-

ability based upon facts to support the same, by which power only the father is divested of the custody of his child, and all the material facts upon which the jurisdiction of the court to make the appointment depends must appear of record. *In re* Bassett, 68 Mich. 354; Galpin v. Page, 18 Wall 35; North v. Joslin, 59 Mich. 647; Holden v. Scanlin, 30 Vt. 178; Harvey v. Harmon, 49 Me. 269; Kimball v. Fiske, 39 N. H. 110; Chase v. Hathway, 14 Mass. 222; State v. Reuff, 29 W. Va. 761. The jurisdiction of the county court is special and limited. North v. Probate Judge, 59 Mich. 624; Smith v. Rice, 11 Mass. 506; Howe v. McGivern, 25 Wis. 529. When a record is silent as to jurisdictional facts there will be no presumption to uphold the judgment, and a party may in a court of common law jurisdiction prove that there was no jurisdiction. Rape v. Steton, 9 Wis. 301; Hall v. Williams, 6 Pick. 232; Morse v. Presby, 25 N. H. 303; Eaton v. Badger, 33 N. H. 233. The province of the jury is in general the same in cases of equity as in those of legal cognizance, and the sufficiency of their verdict will be determined by the same rules. Carter v. Carter, 5 Tex. 93; Wells v. Barrett, 7 Tex. 587. The courts should not take the children away from the father, except where he is of notorious grossly immoral character, or great impurity of life, with which his children come in contact so as to be in danger of contamination. Baird v. Baird, 18 N. J. 197; Rust v. Vanvacter, 9 W. Va. 600; People v. Nickerson, 19 Wend. 14; The King v. DeManneville, 5 East. 220; People v. Humphrey, 24 Barb. 521; People v. Cooper, 8 How. Prac. 273; People v. Olmstead, 27 Barb. 1; Com. v. Briggs, 16 Pick. 205; State v. Richardson, 40 N. H. 275; Newton v. Janvrin, 62 N. H. 440; Story's Eq. Juris. § 1341; *In re* Pulbrook, 11 Eng. Juris. 185; *In rex* Greenhill, 4 Ad. & El. 624; Ward v. Ward, 2 Phillips 786; Ball v. Ball, 2 Simmons 35; Queen v. Clark, 7 El. & Black 186; Garner v. Garner, 41 Ind. 93; People v. Turner, 55 Ill. 284; *In re* Doyle, 7 N. Y. Ch. 78.

*Charles M. Stevens* for respondent.

A county court is a court of record and of general jurisdiction, with original jurisdiction in matters of probate. 2 Black on

Judgments, sec. 633; Constitution, Art. 2, sec. 20; Dayton v. Mintzer, 22 Minn. 393; Davis v. Hudson, 29 Minn. 27; Session Laws of 1890, Ch. 78, sec. 1; Compiled Laws, sec. 5651; Matson v. Swenson, 58 N. W. 570; Shroyer v. Richmond, 16 O. 455; Brook v. Chappell, 34 Wis. 405; Kimball v. Fish, 39 N. H. 110. The circuit court being the appellate court of the county court and a court of general jurisdiction, possesses the power and authority to make any order or enter judgment in a case, properly brought before it, that the county court might make. Broadwater v. Richards, 2 Pac. 544; Cowls v. Cowls, 3 Gilman 435; Brooks v. Chappel, 34 Wis. 405; *In re* Leonard's Estate, 54 N. W. 1082; McPherson v. Cunliff, 11 S. and R. 422; App. of Dreisboch, 2 Rawle 287; Clapp v. Fullerton, 34 N. Y. 190; Note v. Stickney, 90 Am. 136; Tryss v. Fernsworth, 30 Wis. 577. The appointment of a guardian is a proceeding *in rem*, and the order of appointment, made in the exercise of jurisdiction, binds the world. Black on Judgments, sec. 633; 1 Greenleaf on Ev. sec. 550; Cecil v. Cecil, 19 Md. 72. The entry of a judgment without findings, and without the waiver of them, is an irregularity, and a motion in the lower court is the only proper remedy, and the appellate courts should not reverse for such an irregularity. Garr v. Spalding, 51 N. W. 867; Williams v. Schemberi, 46 N.W. 403. The findings of the jury in equitable cases, and in all cases tried to the court, are simply advisory, and possess only binding force when they become the findings of the court by adoption. Vermilyea v. Palmer, 52 N. Y. 471; Bridsall v. Patterson, 51 N. Y. 43; Carrol v. Deiniel, 95 N. Y. 252; Will of Patrick Carrol, 50 Wis. 437; Binghan v. Stage, 23 N. E. 756; Bates v. Gage, 49 Cal. 126; Warring v. Freear, 64 Cal. 54; Stockman v. Riverside, 64 Cal. 57. If, for any cause, the welfare of the infant demands that its care and custody be withheld from the parent and given to another, the parent is not a suitable person to have such care and custody within the meaning of the statute. Sheers v. Stein, 43 N. W. 729; Sturtevant v. State, 15 Neb. 459; Jones v. Darnall, 103 Ind. 569; *In re* Lally, 51 N. W. 1155; 9 Am. and Eng. Enc. of Law, 92; Bonnett v.

Bonnett, 16 N. W. 91; Chapsky v. Wood, 26 Kan. 650; *In re* Scarrett, 76 Mo. 565; *In re* Bart, 25 Kan. 308; *In re* Stockman, 38 N. W. 876; Fronts v. Pierce, 19 N. W. 854; Page v. Green, 3 Mason 482; Giles v. Giles, 46 N. W. 916; *In re* Beckwith, 23 Pac. 164.

KELLAM, J. In the county court of Brown county Adella D. Engle, the invalid mother of Urso A. Engle, a girl then 7 years of age, filed her petition for the appointment of a guardian for said minor. In the petition it was alleged that the father had deserted his family, consisting of said mother and child, and was an unsuitable person to have the care and custody of the girl. The petition, after setting out facts to justify the allegation of desertion and unsuitableness, asked the appointment of Ward B. Drury, a brother of the petitioner, as such guardian. Upon the hearing, the court made an order which, after reciting that: "It appearing from the evidence introduced upon said hearing and trial that said minor is of the age of seven years, and a resident of the county of Brown and state of South Dakota; and that Adella D. Engle, the mother of said minor child, is suffering from the last stages of consumption, and her death may be expected at any moment; and that George S. Engle is an unsuitable person to have the care and custody of the person and estate of said minor; and it further appearing necessary that a guardian for said minor be appointed, and that Ward B. Drury is the uncle of said minor, and is a suitable person to be such guardian,"—appointed said Drury the guardian of said child, under conditions not important to notice here. From this decision and judgment George S. Engle, the father appealed to the circuit court, where, upon the trial, the court submitted certain interrogatories to a jury. The circuit court "in all things affirmed" the judgment of the county court, except that it appointed Mary H. Yorks as guardian of the child, instead of the said Ward B. Drury. From this judgment of the circuit court George S. Engle appeals to this court.

Appellant contends that the circuit court had no power to appoint a guardian; that its jurisdiction was appellate only, and

went no further than a review of the action of the county court in appointing Drury. It might affirm, or it might reverse, and remit the case to the probate court, which alone has the power of appointment. This does not seem to us to be the procedure contemplated by our statute. It is true the original jurisdiction in such proceedings is in the county court. The proceedings can only be initiated there; but from the judgment of the court an appeal may be taken to the circuit court, and such appeal takes the case into that court, where it is to be dealt with and disposed of by a "trial de novo," to "be conducted in the same manner as if the case and proceedings had lawfully originated in that court, and the said appellate court has the same power to decide the questions of fact, which the probate court had," etc. Comp. Laws, § 5976. While there are no words in this section as in the homologous provision of the Michigan and Wisconsin statutes authorizing judgment in that court, we think the design and intent of our statute was the same. It would hardly be conceivable that the case should be sent to the circuit court for "trial *de novo*," with no power to pronounce judgment when it had determined the facts and their legal effect. The proceedings for and on appeal seem to be analogous to those on appeal from justice courts. The appeal may be on "questions of law alone," when the appellate court may "affirm, reverse, or modify," or it may be "on questions of fact, or on questions of both law and fact," when a "trial *de novo*" shall be had in the appellate court. In the one case, a record is brought up for review; in the other, the case came up to be retried. Upon this question see Goss v. Stone, 63 Mich. 319, 29 N. W. 735; *In re* Leonard's Estate (Mich.) 54 N. W. 1082; Broadwater v. Richards (Mont.) 2 Pac. 544. We think, however, that the plain intent of said section 5976 is that, when the appeal is of such character as to require a "trial *de novo*," the procedure in the circuit court should be the same as though the "proceedings had lawfully originated in that court." Under that section, questions of fact may, in the discretion of the court, be submitted to a jury, or they may be tried by the court itself; but in some

manner, as in other cases, questions of fact, upon which the character and extent of the relief granted must depend, should be formally settled, and the findings, either of the court or the jury, preserved, so that it may be known what questions are adjudicated, and upon what the final judgment rests. When, in such case, questions of fact are submitted to a jury, its verdict, it is generally held, is only advisory to the court. While this conclusion has been subject to some criticism, as not in harmony with the plan of our practice, it is without doubt the generally received rule. See Haynes, New Trials & App. § 234, where this question is discussed. In this case, certain questions of fact, which the court evidently deemed material, were thus submitted to a jury. As already intimated, the court might adopt and use the verdict or answers of the jury in whole or in part, or it might decline to so adopt, and make findings of its own. In this case, it is not claimed or suggested that the court made findings, or in any manner intimated any dissatisfaction with those returned by the jury; and in its judgment it is expressly recited that, "jury having been impaneled, and specific questions of fact having been submitted to said jury, and their findings thereon having been duly returned into court, and the court having duly considered the evidence of the respective parties presented upon such trial and said findings of said jury, and being duly advised in the premises, now," etc. We can only read this record to mean that the court was satisfied with the findings of the jury, and adopted and made them the basis of its judgment. Upon such a record, it would be unjustifiable to presume, as suggested by respondent, that the court disregarded such findings, and to further presume that findings by the court were waived, the contrary not being shown. The question then is, is the judgment such as should, or rather can, properly follow the facts as found by the jury?

The questions and answers are as follows: "First. Did George S. Engle, the father of the minor child, Urso, prior to the commencement of this proceeding, abandon or desert his wife and child, or either of them? A. No; he did not abandon

them, or either of them. Second. Did George S. Engle, prior to the commencement of this proceeding, fail or refuse to provide for his family such support as was within his power to provide? A. He failed but did not refuse. Third. Was the said Goorge S. Engle, at and before the commencement of this proceeding, and during his absence from home, engaged in the pursuit of his business as a lawyer in the collection of moneys owing to him? A. Yes. Fourth. Has the said George S. Engle at any time squandered his means in gambling or riotous living? A. No, not to any considerable extent. Fifth. Did George S. Engle, prior to the commencement of this proceeding, furnish his family reasonable support? A. Yes, except for a period of about three months previous to Mrs. Engle's death. Sixth. Did George S. Engle ever gamble to such an extent as to substantially impair his ability to provide support for his family? A. No. Seventh. Did George S. Engle, subsequent to his departure from home, in October, 1892, take proper means to provide and care for his family, and to keep informed as to their condition? A. Not so fully as he should have done. Eighth. Did George S. Engle show a lack of care and attention to his family by failing to visit them when in this state, subsequent to his departure from home, in 1892? A. No, not if there was an understanding between him and his wife. Ninth. Was the absence of George S. Engle, subsequent to the commencement of his suit by attachment against Lyman C. Dayton, in November, 1892, necessary for the prosecution of his business? A. Yes. Tenth. Was the failure of George. S. Engle to write his wife for two months prior to his return, in February, 1892, an act of cruelty? A. No intentional cruelty. Eleventh. Has George S. Engle, within the last two years, squandered in gambling any of his means necessary for use in the care and support of his tamily? A. To no great extent. The above written answers are our answers to the above interrogatories." The rule for the selection and appointment of a guardian for a minor, and the consideration which should control the court therein, are formally set out in our civil Code. It is therein provided that:

"In awarding the custody of a minor, or in appointing a general guardian, the court or judge is to be guided by the following considerations: 1.   By what appears to be for the best interests of the child in respect to its temporal and its mental and moral welfare; and if the child be of sufficient age to form an intelligent preference, the court or judge may consider that preference in determining the question.   2.   As between parents adversely claiming the custody or guardianship, neither parent is entitled to it as of right, but, other things being equal, if the child be of tender years, it should be given to the mother; if it be of an age to require education and preparation for labor or business, then to the father.   Of two persons equally entitled to the custody in other respects, preference is to be given as follows: 1.   To a parent. 2.   To one who was indicated by the wishes of a deceased parent." Comp. Laws, §§ 2642, 2643.   The effect of these provisions is to commit the selection of a guardian very largely to the discretion of the appointing court.   This, in the first instance, is the probate court; but, assuming that, on appeal the appellate court is invested with the same discretion, still it is a discretion to be exercised within the lines of established principles, and should be exercised in such a way, and to such an effect, as that a reason can be given for it.   While this court is in hearty sympathy with the provision of the Code that in all cases like this the paramount consideration must be the present and future welfare of the child, yet we think the presumption always is, until overcome by an adverse showing, that the interests and welfare of the child will be best promoted by continuing that guardianship which nature and the law have provided.   The father and a stranger do not stand upon an equal footing.   It is true parents have no property rights in their children; but parental and filial relations are too sacred and delicate to be ignored, and ought only to be disturbed when it is shown that the well-being of the child plainly requires it.

It would probably do no good to go through the findings of the jury, and endeavor to explain wherein and why they produce a very different impression upon our minds from that received by

the trial court; but they certainly do have such effect, and, much as we dislike to interfere with the discretion and judgment of the trial judge, in whose judgment we have learned to have great confidence, we cannot rid ourselves of the conviction that this judgment, if allowed to stand as an adjudication upon the facts reported, would establish a precedent which it would be unsafe to follow. If it were established as a rule of law in this jurisdiction that the facts found by the jury in this case showed the father to be an unsuitable person to have the custody of his children, and constituted a justification for placing them in other hands and under other guardianship, we believe such trouble and mischief would follow as would find no adequate compension in the possible and occasional betterment of the condition of such transplanted child. Not every child whose father's personal habits and attention to his family fall short of the standard which all of us would approve should be transferred to other custody and guardianship; and, if this appellant is to lose the care and custody and companionship of his only child, we are satisfied that the rights and interests of other families and other fathers and other children require that more persuasive and convincing reasons should be given for thus sundering the very tenderest relations of human life than are found in the verdict of this jury. We are not sure but it ought to be done in this case; but, if so, the facts which justify it should go with the judgment as a rule for future cases. We think the case should be retried on its merits, and for that purpose the judgment will be reversed; but, realizing as we do that the final outcome of a new trial is uncertain, and that any change in the custody of this little girl which should prove but temporary would not be for her interest or advantage, but a positive misfortune to her, this court is clearly of the opinion that, pending such new trial, and until final judgment therein is reached, the care and custody of this child should remain in *statu quo,* and to that extend the reversal of this judgment is temporarily qualified. All the judges concur.