Larry D. LANGERMAN, Plaintiff and Appellant,

v.

Vickie L. LANGERMAN, Roy Kromarek and Lois Kromarek as to Custody and Visitation Matters, Defendants and Appellees.

No. 13936.

Supreme Court of South Dakota.

Considered on Briefs May 23, 1983.

Decided July 27, 1983.

Richard A. Pluimer and Laurence J. Zastrow of Carr, Zastrow & Pluimer, Belle Fourche, for plaintiff and appellant.

Jacqueline Marousek of Bennett & Main, Belle Fourche, for defendants and appellees.

FOSHEIM, Chief Justice.

Appellant Larry D. Langerman (father) and appellee Vickie L. Langerman (mother) were married on February 14, 1970. Two children were born of the marriage—a daughter, now twelve years old, and a son, now eight. In *Langerman v. Langerman,* 321 N.W.2d 532 (S.D.1982), we remanded the divorce action which dissolved this marriage for the limited purpose of allowing the trial court to enter a specific finding of fact regarding the fitness or unfitness of the father to have custody of the children. On remand, the trial court found that the father was an unfit parent and awarded custody of both children to their maternal grandparents (grandparents) at the mother's request. The father appeals. We affirm.

■ Consistent with SDCL 30–27–23, the child custody decisions of this court have generally given preference to a parent over a nonparent.[1] Before a parent's right to custody over his or her own children will be disturbed in favor of a nonparent a clear showing against the parent of "gross misconduct or unfitness, or of other extraordinary circumstances affecting the welfare of the child" is required, and an award cannot be made to grandparents simply because they may be better custodians. *Blow v. Lottman,* 75 S.D. 127, 59 N.W.2d 825 (1953). *See also Langerman v. Langerman, supra; Application of G.K.,* 248 N.W.2d 380, 384, n. 4 (S.D.1976); *Sweeney v. Joneson,* 75 S.D. 213, 63 N.W.2d 249 (1954); *Ex Parte Summers,* 43 S.D. 617, 181 N.W. 831 (1921); *Haglund v. Egge,* 41 S.D. 433, 171 N.W. 212

(1919); and *Engle v. Yorks,* 7 S.D. 254, 64 N.W. 132 (1895).

The term "unfitness" is to be interpreted broadly:

A parent's disqualification results not only from a lack of ability but also from an unwillingness or from an indifferent lack of desire, as well, to rear a child spiritually, morally, mentally and physically according to the minimum standard the law condones. Thus unfitness would follow from voluntary conduct bearing on a parent's cruelty, morals, extreme neglect, abandonment or any attitude or condition, created through marriage or otherwise, resulting in home surroundings below the minimum standards; and unfitness would also result from involuntary circumstances such as extreme poverty, physical or mental infirmity, or any other condition making it impossible for the parent to care for the child according to the minimum requirements.

*Blow v. Lottman,* 75 S.D. at 132, 59 N.W.2d at 827.

■ The trial judge personally observed all witnesses testify. In reviewing findings, we must give due regard to the opportunity of the trial court to judge the credibility of witnesses and to weigh their testimony properly. The findings of the trial court will not be set aside unless they are clearly erroneous. SDCL 15–6–52(a); *Watt v. Watt,* 312 N.W.2d 707 (S.D.1981); *Masek v. Masek,* 89 S.D. 62, 228 N.W.2d 334 (1975). The record supports a clear showing of the following facts:

In 1973 the mother was diagnosed to have multiple sclerosis. The family was able to maintain a home in Scranton, North Dakota for the next two years, but by late 1975 the mother's condition had deteriorated to the point where she was totally unable to care

---

1. SDCL 30–27–23 provides:
   Of two persons equally entitled to the custody in other respects, preference is to be given as follows:
   (1) To a parent;
   (2) To one who was indicated by the wishes of a deceased parent;

(3) To one who already stands in the position of a trustee of a fund to be applied to the child's support;
(4) To a relative.

for herself or her family and required constant attention. The family then moved to the farm of the maternal grandparents located near Scranton. The grandparents had already been providing the mother with assistance five to six times per week since late 1974.

As the trial court found, the father left the family in 1976 "searching for employment and new relationships." In 1977 the mother entered a nursing home in North Dakota, and the children continued to reside with the grandparents, where they have lived most of the time since the breakup of the marriage.

Since leaving the family in 1976, the father has gone through bankruptcy, changed jobs over fifteen times and lived in five different towns in three different states. He has carried on live-in relationships with various women, to which the children have been exposed each time they have visited his home. Appellant has had multiple alcohol-related criminal convictions, and the record indicates that he jeopardized the safety of the children at least once by driving a motor vehicle while drinking liquor. The following colloquy concerning the father took place between the court and the eleven-year-old daughter:

COURT: ... Is there anything else you want to tell me? Did you have a pretty good summer?

DAUGHTER: Yeah. But one time when I was down here when he took me back he told me not to tell Grandma that—well, him and this other guy that were taking me home, they was drinking when they took me home. And he didn't want me to tell Grandma, so I never did, so I thought I would tell you.

COURT: All right. Has this just been recently or has this been a long time ago?

DAUGHTER: No, it's about one or two months ago.

The daughter also expressed fear of her father when he is drunk.

The father has demonstrated a tendency to ignore the safety of his children when he has been drinking. Virginia Woodbeck, a friend of the family, testified that she was babysitting the children at the grandparents' home one night when appellant appeared sometime after the bars had closed. Although he had obviously been drinking he called to his daughter to get up so that they could leave. He told Mrs. Woodbeck he was disgusted with the family and was going to take the children back to Spearfish with him immediately. According to Mrs. Woodbeck it was necessary for her to persuade appellant that, in view of his intoxicated condition, he should wait until the next morning before driving anywhere with the children.

■ It is the court's duty at every turn to see that the child is protected. *Matter of M.B.*, 288 N.W.2d 773 (S.D.1980). Even where a parent is normally given preference as to custody, statutory and parental rights are not conclusive but must yield to the child's best interests and welfare. *Sweeney v. Joneson, supra.* The father's history of drinking and endangering the children's lives while driving a motor vehicle is therefore a very important factor for the court to consider in determining fitness.

■ Other extraordinary circumstances affecting the welfare of the children can also operate to defeat the custody preference of a parent. *Blow v. Lottman, supra.* A parent's moral conduct is a valid consideration in determining parental fitness. *Matter of M.B., supra.* The father's relationships with live-in female companions created a bad example, especially for the daughter who was old enough to recognize the impropriety of his conduct. Although a parent's marital misconduct alone does not establish unfitness without further evidence of a demonstrable effect of such conduct on the children, *Kester v. Kester*, 257 N.W.2d 731 (S.D.1977), if it is committed in the presence of a child old enough to see and recognize the improprieties as such, then the harmful effect of the parent's bad example upon the child is self-evident for determining custody. *Haak v. Haak*, 323 N.W.2d 128 (S.D.1982); *Spaulding v. Spaulding*, 278 N.W.2d 639 (S.D.1979).

The trial court may also consider the father's habit of changing jobs and moving frequently. We have previously held that a transient lifestyle which results in frequent shifting of schools can greatly interfere with the education and proper rearing of children and not be in their best interest. *Haskell v. Haskell,* 324 N.W.2d 423 (S.D. 1982); *See also Kolb v. Kolb,* 324 N.W.2d 279 (S.D.1982); *Wright v. Stahl,* 73 S.D. 157, 39 N.W.2d 875 (1949).

Applying the broad interpretation of unfitness in *Blow v. Lottman, supra,* we cannot conclude the trial court clearly erred in finding the father unfit. The decision of the trial court can result in no great trauma to the children. They have spent most of their young lives with the maternal grandparents since their mother's health deteriorated. Although the age of grandparents is often a circumstance against their having custody, it should be noted that these grandparents have a child at home about the age of appellant's daughter. We agree with the trial court that "it appears in fact and in reality, the maternal grandparents have been the primary caretakers of the Langerman children since almost birth." As of the date of the trial in 1981 the father had made only one two hundred dollar payment to the grandparents for the support of his children while in their care. Both the trial court's finding of unfitness and the surrounding circumstances weigh against disturbing the existing custody of the children with the grandparents.

As noted, *Blow v. Lottman* requires a "clear showing" of a parent's gross misconduct, unfitness, or other extraordinary circumstances before custody can be awarded to a nonparent. Appellant maintains that the recent Supreme Court decision, *Santosky v. Kramer,* 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982), requires "clear and convincing" evidence of unfitness. We need not, however, consider what, if any, greater burden of proof is mandated by

*Santosky.* The *Santosky* standard applies when parental rights are being terminated, not where a custody determination is made incident to a divorce action. The trial court has not terminated appellant's parental rights; it has simply awarded custody of his children to the maternal grandparents subject to visitation privileges. Unlike termination, a custody award is not final or absolute. The trial court retains jurisdiction and may vacate or modify its decision. SDCL 25–4–45.[2]

The trial court's finding of unfitness and its award of custody to the maternal grandparents are affirmed. We grant appellees' motion for attorney's fees on appeal to the extent of $500.

Affirmed.

All the Justices concur.

2. SDCL 25–4–45 provides:
    In an action for divorce the court may, before or after judgment, give such direction for the custody, care, and education of the children of the marriage as may seem necessary or proper, and may at any time vacate or modify the same.