#25025, #25037, #25193-aff in pt & rev in pt-GAS

**2010 SD 31**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

IN THE MATTER OF THE
GUARDIANSHIP OF:  S.M.N.,
T.D.N. and T.L.N., Minors.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE SIXTH JUDICIAL CIRCUIT
HUGHES COUNTY, SOUTH DAKOTA

\* \* \* \*

HONORABLE JOHN L. BROWN
Judge

\* \* \* \*

CHRISTINA L. KLINGER of
May, Adam, Gerdes & Thompson, LLP
Pierre, South Dakota                                Attorneys for appellant, A.G.
                                                    (#25025)

ROSE ANN WENDELL
Pierre, South Dakota                                Attorney for appellee, L.N.,
                                                    (#25037, N.O.R.)

DAVID W. SIEBRASSE
Pierre, South Dakota                                Attorney for appellee, children.

KELLY MARNETTE
Hughes County State's Attorney
Pierre, South Dakota                                Attorney for appellant,
                                                    Hughes County (#25193)

\* \* \* \*

ARGUED NOVEMBER 18, 2009

OPINION FILED **04/07/10**

SEVERSON, Justice

[¶1.]        A.G. (Mother), the mother of S.M.N., T.D.N., and T.L.N., appeals the circuit court's order granting permanent guardianship to L.N. (Grandmother), the children's paternal grandmother, and awarding visitation to Mother pursuant to the South Dakota Guardianship Act (SDCL ch. 29A-5) and SDCL ch. 25-5.  We affirm in part and reverse in part.

## BACKGROUND

[¶2.]        S.M.N., T.D.N., and T.L.N. are the biological children of Mother and R.N. (Father).  Father is not a party to this proceeding.  Throughout their relationship, Father abused drugs and alcohol and physically and emotionally abused Mother.  S.M.N. was born on April 13, 2001.  The Department of Social Services removed S.M.N. from her parents' care for a period of ten months in 2001.  S.M.N. lived with an aunt during that time.  T.D.N. was born on October 17, 2002, and T.L.N. was born on December 10, 2003.  In April 2007, Mother left Father and received a protection order against him.  Mother decided to leave Pierre, South Dakota, to start a new life for her family in Sioux Falls.

[¶3.]        Grandmother played a vital role in the parenting of the children. Grandmother purchased groceries, paid rent, and provided other financial assistance to Mother and Father.  Grandmother purchased beds, bedsheets, clothing, school supplies, and meal tickets for the children.  She bought a washer and dryer for Mother and Father and washed the children's clothes.  She has paid the fees for the children's involvement in activities.  Grandmother often took the children to daycare in the morning and picked them up in the evening, and the

daycare often contacted Grandmother when they needed something for the children. Grandmother regularly took the children to church and celebrated birthdays and holidays with them.

[¶4.] In August 2007, Mother decided to leave the children in Grandmother's care while she found a home and employment in Sioux Falls. Mother and Grandmother agreed that this arrangement would be temporary. Mother signed a typewritten agreement in the presence of her employer, making it clear she intended for Grandmother to care for her children on a temporary basis. Grandmother did not sign this agreement. Grandmother assured Mother she would return the children to Mother's care once she was established in Sioux Falls. Mother moved to Sioux Falls and visited the children in September and October 2007. She also had telephone contact with the children during this time.

[¶5.] Mother asked Grandmother to return the children to her care in December 2007. However, they ultimately agreed that Mother should wait until she received her income tax refund in March 2008. The children celebrated Christmas 2007 with Mother in Sioux Falls, but she returned the children to Grandmother's care. After this visit, Mother had limited telephone contact with Grandmother and the children. On March 16, 2008, Mother informed Grandmother that she would be coming to Pierre to get the children. Grandmother objected. On March 17, 2008, Mother drove to Pierre and attempted to remove S.M.N. from school. The school informed Grandmother and she arrived at the school a short time later. Grandmother and Mother began yelling at one another at S.M.N.'s

school, upsetting S.M.N. to the point that she became physically ill.  Grandmother removed S.M.N. from school and immediately contacted an attorney.

[¶6.]        Grandmother filed a Petition for Appointment of Guardian and Request for Temporary Guardianship on March 17, 2008.  The Petition was based on SDCL ch. 29A-5.  The Petition alleged that if a temporary guardianship were not granted, the children would "suffer irreparable harm," that an "immediate need" for the guardianship existed, and that "the appointment would be in the best interests of [the children]."  The circuit court granted Grandmother an ex parte temporary guardianship.  Thereafter, Grandmother denied Mother visitation or telephone contact with the children.  The circuit court later returned the children to Mother's custody pending a full hearing.  Grandmother, however, filed a Motion to Reconsider, and the circuit court modified its order to alternate physical custody of the children between Mother and Grandmother on a weekly basis.

[¶7.]        The circuit court held a full hearing on the Petition on August 13, 14, and 20, 2008.  The circuit court concluded that Mother's presumptive right to the custody of her children under SDCL 25-5-29 was rebutted by proof that she abdicated her parental rights and responsibilities, and that extraordinary circumstances existed, which, if custody were awarded to her, would result in serious detriment to the children.  Those extraordinary circumstances included Grandmother's provision of the children's physical, emotional, and other needs over a significant period of time; the existence of a stronger bonded relationship between the children and Grandmother as compared to the children and Mother such that a change in custody would cause the children significant emotional harm; and, an

extended, unjustifiable absence of Mother's parental custody. The circuit court therefore granted Grandmother permanent guardianship of the children and awarded Mother visitation. Mother appeals.

[¶8.] Hughes County also raises an issue for this Court's consideration. On May 2, 2008, the circuit court appointed an attorney to represent Mother. On or about October 10, 2008, Mother's court appointed attorney submitted a Voucher for Compensation & Expenses of Court Appointed Attorney. On October 17, 2008, the circuit court authorized payment to Mother's court appointed attorney in the amount of $9,511.72 and ordered Hughes County to pay that amount. On November 21, 2008, Hughes County filed a Motion to Intervene and Objection to Order for Court Appointed Attorney. The circuit court refused to hear that motion based on lack of jurisdiction as the case was on appeal to this Court. Hughes County then filed a Motion to Intervene and Motion for Limited Remand for Purposes of Objecting to Order for Court Appointed Attorney with this Court on December 1, 2008. This Court issued an Order of Remand on January 9, 2009. The circuit court heard Hughes County's motion pursuant to the Order of Remand. The circuit court ordered Hughes County to pay attorney's fees to Mother's court appointed attorney, including those for the appeal.

## STANDARD OF REVIEW

[¶9.] This case involves several matters of statutory interpretation. "Statutory interpretation is a question of law, reviewed de novo." Clough v. Nez, 2008 SD 125, ¶8, 759 NW2d 297, 301 (quoting Scheller v. Faulkton Area Sch. Dist.

No. 24-3, 2007 SD 42, ¶5, 731 NW2d 914, 916).  Our rules of statutory construction are as follows:

> The purpose of statutory construction is to discover the true intention of the law, which is to be ascertained primarily from the language expressed in the statute.  The intent of a statute is determined from what the Legislature said, rather than what the courts think it should have said, and the court must confine itself to the language used.  Words and phrases in a statute must be given their plain meaning and effect.  When the language in a statute is clear, certain, and unambiguous, there is no reason for construction, and [this] Court's only function is to declare the meaning of the statute as clearly expressed.

*In re* Guardianship and Conservatorship for T.H.M. and M.M.M., 2002 SD 13, ¶7, 640 NW2d 68, 71 (quoting Martinmaas v. Engelmann, 2000 SD 85, ¶49, 612 NW2d 600, 611 (quoting Moss v. Guttormson, 1996 SD 76, ¶10, 551 NW2d 14, 17)).

[¶10.] This case also raises questions about the proper application of constitutional standards.  An appeal asserting an infringement of a constitutional right is also an issue of law to be reviewed under the de novo standard of review. State v. Dillon, 2001 SD 97, ¶12, 632 NW2d 37, 43 (citing State v. Stanga, 2000 SD 129, ¶8, 617 NW2d 486, 488).  Under the de novo standard of review, we give no deference to the circuit court's conclusions of law.  Sherburn v. Patterson Farms, Inc., 1999 SD 47, ¶4, 593 NW2d 414, 416 (citing City of Colton v. Schwebach, 1997 SD 4, ¶8, 557 NW2d 769, 771).

[¶11.] The "circuit court's factual findings are reviewed under the clearly erroneous standard." *In re* Guardianship and Conservatorship of A.L.T. & S.J.T., 2006 SD 28, ¶37, 712 NW2d 338, 347 (citing Meldrum v. Novotny (hereinafter *Meldrum II*), 2002 SD 15, ¶18, 640 NW2d 460, 463) (additional citation omitted). "This means that we must give 'considerable deference' to the [circuit] court's

findings" of fact. *Id.* (quoting *In re* J.S.B., Jr., 2005 SD 3, ¶12, 691 NW2d 611, 615 (citing SDCL 15-6-52(a))). We are bound to "give due regard to the opportunity of the [circuit] court to judge the credibility of witnesses and to weigh their testimony properly." *Meldrum II*, 2002 SD 15, ¶18, 640 NW2d at 463 (citing Langerman v. Langerman, 336 NW2d 669, 670 (SD 1983)). Findings of fact are clearly erroneous when a complete review of the evidence leaves this Court with a "definite and firm conviction that a mistake has been made." *A.L.T.*, 2006 SD 28, ¶37, 712 NW2d at 347 (quoting *J.S.B., Jr.*, 2005 SD 3, ¶12, 691 NW2d at 615) (additional citation omitted). Whether the facts of the case constitute extraordinary circumstances of serious detriment to the welfare of the children, however, is a conclusion of law that we review de novo. *Meldrum II*, 2002 SD 15, ¶49, 640 NW2d at 469.

[¶12.]    Evidentiary rulings made by the circuit court are presumed correct and are reviewed under an abuse of discretion standard. State v. Boston, 2003 SD 71, ¶14, 665 NW2d 100, 105 (State v. Goodroad, 1997 SD 46, ¶9, 563 NW2d 126, 129 (citing State v. Oster, 495 NW2d 305, 309 (SD 1993))). If error is found, it must be prejudicial before this Court will overturn the circuit court's evidentiary ruling. *Id.* (citing State *ex rel.* Dep't of Transp. v. Spiry, 1996 SD 14, ¶11, 543 NW2d 260, 263) (additional citation omitted).

## DECISION

### *Appeal #25025, #25037*

[¶13.]    1.    **Whether the circuit court erred in transferring custody from Mother, the natural parent, to Grandmother, a non-parent, utilizing the South Dakota Guardianship Act (SDCL ch. 29A-5) and SDCL ch. 25-5.**

[¶14.]     Mother argues that it was improper for the circuit court to transfer custody to Grandmother, a non-parent, utilizing the South Dakota Guardianship Act (SDCL ch. 29A-5) and SDCL ch. 25-5. Mother relies heavily on *T.H.M.*, 2002 SD 13, 640 NW2d 68. In that case, a grandmother commenced proceedings pursuant to the South Dakota Guardianship Act alleging that her grandchildren were abused and neglected and the mother was unfit. This Court held that the abuse and neglect allegations triggered the State's interest, as *parens patriae*, in protecting the welfare of the children. *Id.* ¶11, 640 NW2d at 72. The State was the only party that could involuntarily deprive the natural parent of custody and place the children with a non-parent when abuse and neglect was the contested issue. *Id.* This Court held that the statutory provisions specifically relating to abuse and neglect proceedings, as well as the provisions relating to juvenile court, controlled. *Id.* ¶¶9-10, 640 NW2d at 71-72. Thus, the Department of Social Services could not be bypassed when custody was involuntarily transferred from the natural parent to a non-parent. *Id.* ¶11, 640 NW2d at 72.

[¶15.]     The South Dakota Legislature passed emergency legislation amending the South Dakota Guardianship Act (SDCL ch. 29A-5) following *T.H.M.*[1] *See* 2002 SD Laws ch. 140 § 1. The amended version of SDCL 29A-5-106 reads:

---

1.     The prior version of SDCL 29A-5-106 provided:

> Nothing in this chapter affects the provisions of chapters 26-7A, 26-8A, 26-8B, and 26-8C, relating to the appointment of guardians and conservators and the administration of guardianships and conservatorships for children who have been adjudicated to be delinquent, abused, neglected, or in need of supervision. Nor may anything in this chapter affect the

(continued . . .)

Custody of a child may be sought by a person other than the parent under this chapter and the substantive law of this state. A person other than the parent may not use this chapter to seek custody if a proceeding is pending pursuant to chapter 25-3, 25-4, 25-5A, 25-6, 25-8, 26-7A, 26-8A, 26-8B, or 26-8C, or if the child is subject to the continuing jurisdiction of another court. Nothing in this chapter affects the provisions of chapters 25-4, 25-5, 25-5A, 25-6, 25-8, 26-7A, 26-8A, 26-8B, and 26-8C relating to the appointment of guardians and conservators and the administration of guardianships and conservatorships for children who have been adjudicated to be delinquent, abused, neglected, or in need of supervision. Nor may anything in this chapter affect the provisions of Title 27A, relating to individuals with mental illnesses. In the event of any inconsistency or conflict, the provisions of chapters 25-4, 25-5, 25-5A, 25-6, 25-8, 26-7A, 26-8A, 26-8B, and 26-8C or of Title 27A shall control, and the provisions of this chapter are in all respects to be supplementary thereto. A petition pursuant to this chapter seeking custody by a person other than the parent shall be dismissed if an action concerning the child is filed pursuant to chapter 26-7A, 26-8A, 26-8B, or 26-8C. If, while a guardianship petition pursuant to this chapter seeking custody by a person other than the parent is pending, an action is commenced pursuant to chapter 25-4, 25-5, 25-5A, 25-6, or 25-8, the court may, in its discretion, dismiss the guardianship proceeding and defer the child custody matter to the other proceeding or considering the stage of the proceedings, judicial economy, and best interests of the child, retain jurisdiction and establish the guardianship, or enter an appropriate protection order pending resolution of the pending proceedings.

SDCL 29A-5-106.1 further provides:

It is the express legislative intent that §§ 29A-5-106 and 29A-5-106.1, together with chapter 25-5 dealing with custody disputes between a parent and a person other than the parent, apply to all pending and subsequent guardianship matters involving a

---

(. . . continued)

provisions of Title 27A, relating to individuals with mental illnesses. In the event of any inconsistency or conflict, the provisions of chapters 26-7A, 26-8A, 26-8B, and 26-8C, or of Title 27A shall control, and the provisions of this chapter are in all respects to be supplementary thereto.

custody dispute between a parent and a person other than the parent.

[¶16.] The amended South Dakota Guardianship Act (SDCL ch. 29A-5) references SDCL ch. 25-5. In 2002, the Legislature also enacted SDCL 25-5-29 to SDCL 25-5-34 in response to *Meldrum II*, 2002 SD 15, 640 NW2d 460. *See* 2002 SD Laws ch. 126 § 3. SDCL 25-5-29 provides:

> Except for proceedings under chapter 26-7A, 26-8A, 26-8B, or 26-8C, the court may allow any person other than the parent of a child to intervene or petition a court of competent jurisdiction for custody or visitation of any child with whom he or she has served as a primary caretaker, has closely bonded as a parental figure, or has otherwise formed a significant and substantial relationship. It is presumed to be in the best interest of a child to be in the care, custody, and control of the child's parent, and the parent shall be afforded the constitutional protections as determined by the United States Supreme Court and the South Dakota Supreme Court. A parent's presumptive right to custody of his or her child may be rebutted by proof:
> (1) That the parent has abandoned or persistently neglected the child;
> (2) That the parent has forfeited or surrendered his or her parental rights over the child to any person other than the parent;
> (3) That the parent has abdicated his or her parental rights and responsibilities; or
> (4) That other extraordinary circumstances exist which, if custody is awarded to the parent, would result in serious detriment to the child.

In *Meldrum II*, Justice Konenkamp identified "extraordinary circumstances" several other jurisdictions have found sufficient to overcome a natural parent's constitutionally protected presumptive right of custody to her children. 2002 SD 15, ¶58, 640 NW2d at 470-71 (Konenkamp, J., concurring). SDCL 25-5-30 flows from Justice Konenkamp's concurring opinion:

> Serious detriment to a child may exist whenever there is proof of one or more of the following extraordinary circumstances:

(1)    The likelihood of serious physical or emotional harm to the child if placed in the parent's custody;

(2)    The extended, unjustifiable absence of parental custody;

(3)    The provision of the child's physical, emotional, and other needs by persons other than the parent over a significant period of time;

(4)    The existence of a bonded relationship between the child and the person other than the parent sufficient to cause significant emotional harm to the child in the event of a change in custody;

(5)    The substantial enhancement of the child's well-being while under the care of a person other than the parent;

(6)    The extent of the parent's delay in seeking to reacquire custody of the child;

(7)    The demonstrated quality of the parent's commitment to raising the child;

(8)    The likely degree of stability and security in the child's future with the parent;

(9)    The extent to which the child's right to an education would be impaired while in the custody of the parent; or

(10)   Any other extraordinary circumstance that would substantially and adversely impact the welfare of the child.

*See Meldrum II*, 2002 SD 15, ¶58, 640 NW2d at 470-71 (Konenkamp, J., concurring).  Through the amendments to SDCL 29A-5-106, SDCL 29A-5-106.1, and SDCL ch. 25-5, the Legislature made clear that a non-parent may seek a transfer of custody from a natural parent under the South Dakota Guardianship Act (SDCL ch. 29A-5) and SDCL ch. 25-5, even where allegations of abuse and neglect serve as the grounds for the petition, thus bypassing the Department of Social Services.  The statutory amendments overruled *T.H.M.* to that extent.  Therefore, the circuit court did not err by utilizing the South Dakota Guardianship Act (SDCL ch. 29A-5) and SDCL ch. 25-5 to transfer custody from Mother to Grandmother.

[¶17.]    We must also consider the constitutional dimensions of our decision in *T.H.M.*  Natural parents have a fundamental right to the care, custody, and control

of their children. Troxel v. Granville, 530 US 57, 66, 120 SCt 2054, 2060, 147 LEd2d 49 (2000); Santosky v. Kramer, 455 US 745, 758-59, 102 SCt 1388, 1397, 71 LEd2d 599 (1982) (citation omitted). "The fundamental liberty interest of natural parents in the care, custody, and management of their children does not evaporate simply because they have not been model parents[.]" *Santosky*, 455 US at 753, 102 SCt at 1394-95. In *Santosky*, the Court stated:

> We have little doubt that the Due Process Clause would be offended "[i]f a State were to attempt to force the breakup of a natural family, over the objections of the parents and their children, without some showing of unfitness and for the sole reason that to do so was thought to be in the children's best interest."

455 US at 760 n10, 102 SCt at 1398 n10 (quoting Quilloin v. Walcott, 434 US 246, 255, 98 SCt 549, 554, 54 LEd2d 511 (1978) (quoting Smith v. Org. of Foster Families, 431 US 816, 862-63, 97 SCt 2094, 2119, 53 LEd2d 14 (1977) (Stewart, J., concurring in judgment))). The *Troxel* Court later stated:

> [T]here is a presumption that fit parents act in the best interests of their children. . . . Accordingly, so long as a parent adequately cares for his or her children (*i.e.*, is fit), there will normally be no reason for the State to inject itself into the private realm of the family to further question the ability of that parent to make the best decisions concerning the rearing of that parent's children.

530 US at 68-69, 120 SCt at 2061 (citing Reno v. Flores, 507 US 292, 304, 113 SCt 1439, 1448, 124 LEd2d 1 (1993)).

[¶18.] In *T.H.M.*, the use of the South Dakota Guardianship Act (SDCL ch. 29A-5) to effect a transfer of custody from the natural parent was "not merely procedural flaw." 2002 SD 13, ¶14, 640 NW2d at 73. The statutory scheme for abuse and neglect proceedings found in SDCL ch. 26-7A and SDCL ch. 26-8A "exist[s] for the protection of the children, the parents, and the family unit." *Id.*

Those chapters "employ multiple constitutional safeguards that are not present in the [South Dakota] Guardianship Act" (SDCL ch. 29A-5) because they involve "the fundamental right of [natural] parents to the care, custody, and control of their children[.]"[2] *Id.* (citing *Troxel,* 530 US 57, 120 SCt 2054; Lassiter v. Dep't. of Soc. Servs., 452 US 18, 101 SCt 2153, 68 LEd2d 640 (1981)).  This Court thus held that the circuit court violated the constitutional rights of the mother and her children by allowing the action to transfer custody to a non-parent to proceed under the South Dakota Guardianship Act (SDCL ch. 29A-5).  *Id.* ¶15.

[¶19.]     The Legislature's amendments to SDCL 29A-5-106, SDCL 29A-5-106.1, and SDCL ch. 25-5 did not overrule this Court's constitutional holding in *T.H.M.*  A statute cannot overrule our holding that a natural parent must be guaranteed certain constitutional protections when a court transfers custody from a parent to a non-parent.  *See* S.D. Auto. Club, Inc. v. Volk, 305 NW2d 693, 700 (SD 1981).  To that extent, *T.H.M.* has not been overruled.

---

2.     The protections provided SDCL ch. 26-7A and SDCL ch. 26-8A absent in the Guardianship Act include:  (1) SDCL 26-7A-30, providing the parent be advised of her constitutional rights, including the right to a court appointed attorney; (2) SDCL 26-7A-34, providing for separate adjudicatory and dispositional hearings; (3) SDCL 26-7A-39, providing for compulsory process for the attendance of witnesses; (4) SDCL 26-7A-57 through SDCL 26-7A-81, providing for discovery, especially the requirements for the manner and scope of examination, as well as the right of the parent to be present at the examination; (5) SDCL 26-7A-82, placing an elevated "clear and convincing" burden of proof upon the party alleging abuse and neglect instead of a preponderance standard; (6) SDCL 26-7A-83, providing the party who prepares reports or material to be admitted at trial shall be present at trial as a witness for examination and cross-examination; and (7) SDCL 26-8A-21, providing reasonable efforts be made to eliminate the need for removal and to return the child after removal. *See T.H.M.*, 2002 SD 13, ¶15, 640 NW2d at 73.

[¶20.]        SDCL 25-5-29 contains a provision expressly protecting the constitutional rights of natural parents.  SDCL 25-5-29 provides:  "It is presumed to be in the best interest of a child to be in the care, custody, and control of the child's parent, and the parent shall be afforded the constitutional protections as determined by the United States Supreme Court and the South Dakota Supreme Court."  The Legislature's inclusion of this language in SDCL 25-5-29 acknowledges that certain constitutional protections are applicable to the South Dakota Guardianship Act (SDCL ch. 29A-5).  The question remains, however, which constitutional protections will be afforded to natural parents in guardianship proceedings under the broad swath of that language.  This issue was not fully presented to this Court.  Furthermore, unlike the present case, *T.H.M.* dealt with an unfit parent.  Thus, we decline to decide the extent to which the constitutional safeguards this Court alluded to in *T.H.M.* are encompassed by SDCL 25-5-29.  *See* 2002 SD 13, ¶15, 640 NW2d at 73.  We address only the constitutional safeguards relevant to this case.

[¶21.]        In South Dakota, a showing of "extraordinary circumstances" may overcome the constitutional preference in favor of fit parents.  *See* SDCL 25-5-29.  A parent's right to custody of her children will not be disturbed except upon a "clear showing against the parent of gross misconduct or unfitness, or of other extraordinary circumstances affecting the welfare of the child."  *Clough*, 2008 SD 125, ¶9, 759 NW2d 297, 302 (quoting D.G. v. D.M.K., 1996 SD 144, ¶46, 557 NW2d 235, 243 (citing Cooper v. Merkel, 470 NW2d 253, 255-56 (SD 1991) (citing Langerman v. Langerman, 336 NW2d 669, 670 (SD 1983) (citing Blow v. Lottman,

75 SD 127, 129-30, 59 NW2d 825, 826 (1953))))). However, to adequately protect the natural parent's fundamental liberty interest in the custody of her children, "extraordinary circumstances" must denote more than a simple showing of the children's best interests. *Id.* ¶10 *(c*itation omitted). "Extraordinary circumstances" must be a high threshold in cases such as this where the South Dakota Guardianship Act (SDCL ch. 29A-5) and SDCL ch. 25-5 are used to transfer custody from a natural parent to a non-parent.

[¶22.]     The circuit court did not find Mother unfit. Instead, the circuit court overrode Mother's presumptive right to custody by finding extraordinary circumstances as defined in SDCL 25-5-29 and SDCL 25-5-30. The burden is on the petitioner in a guardianship proceeding to rebut the natural parent's presumptive right to custody. *A.L.T.*, 2006 SD 28, ¶39, 712 NW2d at 348. However, this Court has not clearly articulated which burden of proof applies in these cases. We hold that the petitioner in a guardianship proceeding must demonstrate extraordinary circumstances by clear and convincing evidence to overcome a natural parent's presumptive right to custody. *See* SDCL 26-7A-82 (placing elevated "clear and convincing" burden of proof upon party alleging abuse and neglect); *Troxel*, 530 US at 70, 120 SCt at 2062 ("[I]f a fit parent's decision . . . becomes subject to judicial review, the court must accord at least some special weight to the parent's own determination."); *Santosky*, 455 US at 769, 102 SCt at 1403 (holding that due process requires that state seeking to revoke rights of parents in their children support allegations of abuse and neglect by "clear and convincing evidence"); *Clough*, 2008 SD 125, ¶9, 759 NW2d 297, 302 (citations omitted) (stating that a

parent's right to custody over her children will not be disturbed except upon a "*clear* showing of . . . extraordinary circumstances affecting the welfare of the child." (emphasis added)).

[¶23.]    **2.    Whether the facts as found by the circuit court constitute circumstances sufficient to grant permanent guardianship to Grandmother, a non-parent.**

[¶24.]    Mother argues that the facts as found by the circuit court did not constitute circumstances sufficient to grant permanent guardianship to Grandmother, a non-parent. The circuit court concluded that Mother's presumptive right to the custody of her children under SDCL 25-5-29 was rebutted by proof that she abdicated her parental rights and responsibilities, and that extraordinary circumstances existed, which, if custody were awarded to her, would result in serious detriment to the children.

[¶25.]    In finding that Mother's presumptive right to the custody of her children under SDCL 25-5-29 was rebutted by proof that she abdicated her parental rights and responsibilities, the circuit court misconstrued the term "abdication." Abdication of parental rights and responsibilities is akin to abandonment, which we have defined in the context of termination of parental rights as follows:

> [T]o constitute abandonment under our code it must appear by clear and convincing evidence that there has been by the parents a giving-up or total desertion of the minor child. In addition, there must be a showing of an intent on the part of the parent to abandon and to relinquish parental obligations; this intent may be inferred from conduct. When examining intent, the court should consider a parent's presence, love, care, affection, and monetary support.

- 15 -

*In re* Adoption of C.D.B., 2005 SD 115, ¶12, 706 NW2d 809, 814 (internal citations and quotations omitted).[3] In August 2007, Mother, in an attempt to escape an abusive relationship, decided to temporarily leave her children in Grandmother's care while she found a home and employment in Sioux Falls. Mother visited the children in September and October. She also had telephone contact with the children during this time. Mother asked that Grandmother return the children to her care in December 2007. The children celebrated Christmas with Mother in Sioux Falls, but she returned the children to Pierre. On March 16, 2008, Mother informed Grandmother that she would be coming to Pierre to get the children, but Grandmother objected. On March 17, 2008, Mother drove to Pierre to get her children. Mother intended that Grandmother care for the children on a temporary basis and made efforts to maintain contact with the children and ensure their return to her custody. On this basis, the facts found by the circuit court do not meet the legal standard of abdication of parental rights and responsibilities by clear and convincing evidence. *See* Claymore v. Serr, 405 NW2d 650, 654-55 (SD 1987) (reversing trial court's finding that father abandoned his daughter because daughter had many contacts with father and his family).

---

3. Additionally, SDCL 25-7-17 provides:

> Proof of abandonment or desertion of a child by a parent, or the omission by a parent to furnish necessary food, clothing, shelter, medical attendance, or other remedial care, or other means of support for his child is prima facie evidence that the abandonment, desertion, or omission is intentional and without lawful excuse.

[¶26.]     The circuit court also found that Mother's presumptive right to the custody of her children under SDCL 25-5-29 was rebutted by proof that extraordinary circumstances existed, which, if custody were awarded to her, would result in serious detriment to the children. In order to rebut Mother's presumptive right to the custody of her children, Grandmother had the burden to demonstrate extraordinary circumstances affecting the welfare of the children by clear and convincing evidence. *See supra* ¶22.

[¶27.]     The circuit court first found that extraordinary circumstances existed under SDCL 25-5-30(3) because Grandmother provided for the children's physical, emotional, and other needs over a significant period of time. The Legislature enacted SDCL ch. 25-5 in response to *Meldrum II*, 2002 SD 15, 640 NW2d 460, and the definition of "extraordinary circumstances" found in SDCL 25-5-30 flows from Justice Konenkamp's concurring opinion in that case. *See* 2002 SD Laws ch. 126 § 3. In *Meldrum II*, this Court concluded extraordinary circumstances existed when a child lived with a non-parent for six years with limited contact with his natural parent. 2002 SD 15, 640 NW2d 460. By contrast, the children in this case lived with Grandmother, a non-parent, for seven months during which time the children visited and had telephone contact with Mother. These facts found by the circuit court do not meet the legal standard of extraordinary circumstances as defined in SDCL 25-5-30(3) by clear and convincing evidence.

[¶28.]     The circuit court also found that extraordinary circumstances existed under SDCL 25-5-30(4) because Grandmother had a stronger bonded relationship with the children such that a change in custody would cause the children significant

emotional harm.  The parties presented ample evidence of a strong bonded relationship between Grandmother and the children.  By contrast, the testimony presented at trial indicated that Mother had a strained relationship with her children.  However, when Mother initially moved to Sioux Falls, the children missed her greatly.  It thus appears that Mother's relationship with her children became strained as a result of their separation.  These facts found by the circuit court do not meet the legal standard of extraordinary circumstances as defined in SDCL 25-5-30(4) by clear and convincing evidence.

[¶29.]        The circuit court further found that extraordinary circumstances existed under SDCL 25-5-30(2) because there was an extended, unjustifiable absence of Mother's parental custody.  A review of the record demonstrates that Mother temporarily left her children in Grandmother's care to escape an abusive relationship and to establish a new life for her family in Sioux Falls.  During that time, Mother took steps to maintain contact with her children and to ensure their return to her custody.  *Contra Meldrum II*, 2002 SD 15, 640 NW2d 460.  Mother's fundamental liberty interest in the custody of her children does not evaporate simply because she has not been a model parent.  *See Santosky*, 455 US at 753, 102 SCt at 1394-95.  These facts found by the circuit court do not meet the legal standard of extraordinary circumstances as defined in SDCL 25-5-30(2) by clear and convincing evidence.  For these reasons, we reverse the circuit court's legal conclusion that the facts it found were sufficient to grant permanent guardianship to Grandmother, a non-parent.

[¶30.]       **3.**       **Whether the circuit court abused its discretion by admitting into evidence statements made by the children to a counselor and a custody evaluator.**

[¶31.]       Mother argues that the circuit court abused its discretion by admitting into evidence statements made by the children to Peggy Heuston, a professional counselor, and Judy Zimbelman, a custody evaluator. The circuit court allowed the children's statements under SDCL 19-16-39. The circuit court found the statements had sufficient indicia of reliability as required by SDCL 19-16-39(3) based on Heuston's testimony.

[¶32.]       "Hearsay is not admissible except as provided by law or by chapters 19-9 to 19-18, inclusive, or by other rules prescribed by the Supreme Court." SDCL 19-16-4. However, SDCL 19-16-39 provides:

> An out-of-court statement not otherwise admissible by statute or rule of evidence is admissible in evidence in any civil proceeding alleging child abuse or neglect or any proceeding for termination of parental rights if:
> (1)     The statement was made by a child under the age of ten years or by a child ten years of age or older who is developmentally disabled, as defined in § 27-1-3; and
> (2)     The statement alleges, explains, denies, or describes:
>       (a)     Any act of sexual penetration or contact performed with or on the child; or
>       (b)     Any act of sexual penetration or contact with or on another child observed by the child making the statement;
>       (c)     Any act of physical abuse or neglect of the child by another; or
>       (d)     Any act of physical abuse or neglect of another child observed by the child making the statement; and
> (3)     The court finds that the time, content, and circumstances of the statement and the reliability of the person to whom the statement is made provide sufficient indicia of reliability; and
> (4)     The proponent of the statement notifies other parties of an intent to offer the statement and the particulars of the

statement sufficiently in advance of the proceeding at which the proponent intends to offer the statement into evidence, to provide the parties with a fair opportunity to meet the statement.

For purposes of this section, an out-of-court statement includes a video, audio, or other recorded statement.

[¶33.] The statements made by the children to Heuston and Zimbelman do not meet the requirements of SDCL 19-16-39. SDCL 19-16-39(3) requires that children's hearsay statements explaining, alleging, denying, or describing an act of physical abuse or neglect have sufficient indicia of reliability. The circuit court found the children's hearsay statements reliable without detailing what circumstances supported that conclusion. Furthermore, a review of the record does not make the reliability of the statements readily apparent. *See In re* J.B., 2008 SD 80, ¶9, 755 NW2d 496, 499. The children's statements lack any corroboration. Additionally, while Heuston and Zimbelman testified that they did not believe Mother or Grandmother encouraged the children to make the statements, they admitted that some of the statements were inconsistent with the children's vocabulary and level of maturity. Thus, the statements lack sufficient indicia of reliability and are not admissible under SDCL 16-19-39.

*Appeal #25193*

[¶34.] **1. Whether writ of certiorari, rather than direct appeal, was the proper means to challenge the circuit court's authority to appoint Mother counsel.**

[¶35.] Mother argues that writ of certiorari, rather than direct appeal, was the proper means to challenge the circuit court's authority to appoint Mother counsel. "A writ of certiorari is an equitable remedy available when an inferior court exceeds its jurisdiction 'and there is no writ of error or appeal nor, in the

judgment of the court, any other plain, speedy, and adequate remedy.'" Duffy v. Circuit Court, Seventh Judicial Circuit, 2004 SD 19, ¶3, 676 NW2d 126, 128 (quoting SDCL 21-31-1). Hughes County had an adequate remedy in this case. Hughes County timely filed a Motion to Intervene and Objection to Order for Court Appointed Attorney, thereby making the circuit court's authority to appoint Mother counsel an integral issue in this case. Hughes County has properly brought this issue before this Court by direct appeal. *See* State v. $1,010.00 in Am. Currency, 2006 SD 84, 722 NW2d 92.

[¶36.]  **2.    Whether the circuit court had the authority to appoint Mother counsel at the expense of Hughes County.**

[¶37.]    No statute specifically grants a circuit court the authority to appoint counsel for a natural parent in a guardianship proceeding to transfer custody to a non-parent. However, SDCL 29A-5-117 provides: "Nothing in this chapter precludes the appointment of an attorney, guardian ad litem, or court representative if the court determines that such an appointment is necessary." The circuit court, having determined that the appointment of an attorney was necessary to safeguard Mother's fundamental right to the care, custody, and management of her children, acted within its statutory authority when it appointed an attorney to represent her.

[¶38.]    The circuit court ordered Hughes County to pay attorney's fees for Mother's court appointed attorney, including those for appeal. While we conclude that the circuit court had the statutory authority to appoint counsel for Mother, one

very significant question remains: who is to pay for that attorney?[4] SDCL 29A-5-116 authorizes the court to award compensation to a guardian, conservator, or attorney for the estate when those services have been beneficial to the minor, the protected person, or the estate. Additionally, SDCL 15-17-38 provides:

> The court, if appropriate, in the interests of justice, may award payment of attorneys' fees in all cases of divorce, annulment of marriage, determination of paternity, *custody*, *visitation*, separate maintenance, support, or alimony. . . . The court may award attorneys' fees from trusts administered through the court as well as in probate and *guardianship proceedings*.

(Emphasis added.) *See* 2006 SD Laws ch. 111 § 1 (inserting the words "custody" and "visitation" into SDCL 15-17-38). However, the Legislature has not provided any statutory authority imposing the duty to pay the natural parent's attorney's fees in a guardianship proceeding on the county.[5] We therefore reverse the circuit court's order that Hughes County pay attorney's fees to Mother's court appointed attorney, including those for appeal.

[¶39.] Affirmed in part, and reversed in part.

[¶40.] GILBERTSON, Chief Justice, and KONENKAMP, ZINTER, and MEIERHENRY, Justices, concur.

---

4. We note a court appointed attorney was also provided for the minor children in this case at county expense. SDCL 29A-5-205 specifically authorizes the circuit court to appoint an attorney for a minor child in a guardianship proceeding. However, as with an attorney appointed to represent a natural parent, SDCL ch. 29A-5 does not provide who is to pay for that attorney.

5. The parties have not raised, and we therefore do not address, the question whether the circuit court may tax the costs of Mother's court appointed attorney to a party other than Hughes County under SDCL 15-17-38.