#27456-a-DG
**2016 S.D. 20**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

ANTONIO AGUILAR,                                Plaintiff and Appellant,

v.

BRITTANY LEE AGUILAR                    Defendant,

and

TOSHA SMITH,                                         Intervener and Appellee.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE SEVENTH JUDICIAL CIRCUIT
PENNINGTON COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE ROBERT GUSINSKY
Judge

\* \* \* \*

ROBERT D. PASQUALUCCI
Rapid City, South Dakota                     Attorney for plaintiff
                                                                and appellant.


ANGELA COLBATH
Rapid City, South Dakota                     Attorney for intervener
                                                                and appellee.

\* \* \* \*

CONSIDERED ON BRIEFS
ON JANUARY 11, 2016
OPINION FILED **03/09/16**

#27456

GILBERTSON, Chief Justice

[¶1.]    Antonio (Tony) Aguilar filed for divorce from Brittany Aguilar and sought custody of their daughter, M.A.  Brittany's sister, Tosha Smith, intervened and sought custody of M.A.  The circuit court concluded that extraordinary circumstances warranted giving custody of M.A. to Tosha, and Tony appeals.  We affirm.

## Facts and Procedural History

[¶2.]    Tony and Brittany Aguilar were married on June 4, 2010, in Tucson, Arizona.  The couple have one minor child together, M.A., who was born on April 30, 2011.

[¶3.]    At the time M.A. was born, neither Tony nor Brittany was legitimately employed; Tony supported his family through the sale of illegal drugs.  Additionally, both Tony and Brittany used heroin.  Tony—a former member of the "Vista Bloods" gang—also has an extensive criminal history including possession, consumption, and distribution of controlled substances; aggravated assaults; and violations of probation and parole.

[¶4.]    On April 14, 2011, at age 19, Tony was convicted in Arizona for selling or transferring an illegal, cocaine-based drug.  He was sentenced to three years of intensive probation.  However, Tony subsequently violated the conditions of his probation, and within several months of M.A.'s birth, he was incarcerated.  Tony was eventually placed on work furlough.

[¶5.]    In the fall of 2011, while out on work furlough, Tony stopped at his home to retrieve several personal items.  While there, it appeared to Tony that

Brittany was unhealthy. He observed what he recognized to be track marks on her arm. Concerned about Brittany's ability to care for M.A., Tony called Brittany's mother, Koree Hamilton, who lived in South Dakota. Tony asked Koree to come to Arizona, bring M.A. to South Dakota, and care for her. Koree and Tosha, who was also Koree's daughter, agreed and brought M.A. to Sioux Falls, where Tosha was living at the time.[1] Although Tony asserts he stayed in contact with Koree and Tosha, the court found that he did not maintain regular contact with M.A. or regularly inquire about her status with Tosha. Tosha has cared for M.A. since that time, and they now reside in Rapid City, as do many of M.A.'s maternal relatives.

[¶6.] Since entering the criminal justice system, Tony has taken significant steps toward improving himself as a person and as a father. While on probation, Tony took court-ordered parenting classes and obtained his GED. He attended substance-abuse classes multiple times each week. Prior to his release in September 2013, Tony became romantically involved with Chantil Astemborski. Tony and Chantil are now engaged, and Tony moved into Chantil's home after his release.[2] Tony has taken additional parenting classes since his release. According to Tony, he is active in a church and is no longer a gang member. However, the circuit court found that Tony is unable to financially support M.A. on his own, making M.A. dependent on Tony's relationship with Chantil.

---

1. Koree and Tosha also brought Brittany to South Dakota to receive substance-abuse treatment. Brittany failed to complete treatment and has since been incarcerated several times in South Dakota.

2. Tony's brother Fernando, who is also a member of the Vista Bloods, introduced Tony to Chantil.

[¶7.] In December 2013, Tony and Chantil travelled to South Dakota with the intention of bringing M.A. back to Arizona to live with them and Chantil's two children. Tosha thwarted Tony's attempt by locking herself and M.A. in a gas station's restroom and summoning Brittany and law enforcement. Tony subsequently filed for divorce on February 10, 2014, and sought custody of M.A. Tosha intervened. The circuit court found that Tosha sought custody of M.A. only until such time as Tony or Brittany is able to properly care for M.A. Finding it was in M.A.'s best interest to remain with Tosha, the court awarded Tosha custody of M.A.

[¶8.] Tony appeals, raising the following issue: Whether the circuit court erred in awarding Tosha custody of M.A.

### Standard of Review

[¶9.] Determining whether extraordinary circumstances exist sufficient to overcome parental rights regarding the custody of children is a question of law reviewed de novo. *In re Guardianship of S.M.N.*, 2010 S.D. 31, ¶ 11, 781 N.W.2d 213, 218. "Under the de novo standard of review, we give no deference to the circuit court's conclusions of law." *Id.* ¶ 10, 781 N.W.2d at 218. The court's factual findings will not be disturbed unless they are clearly erroneous. *Id.* ¶ 11, 781 N.W.2d at 218. Therefore, we "will overturn findings of fact on appeal only when a complete review of the evidence leaves the Court with a definite and firm conviction that a mistake has been made." *Clough v. Nez*, 2008 S.D. 125, ¶ 8, 759 N.W.2d 297, 301 (quoting *Miller v. Jacobsen*, 2006 S.D. 33, ¶ 19, 714 N.W.2d 69, 76). We "give due regard to the opportunity of the circuit court to judge the

credibility of witnesses and to weigh their testimony properly." *S.M.N.*, 2010 S.D. 31, ¶ 11, 781 N.W.2d at 218 (quoting *Meldrum v. Novotny*, 2002 S.D. 15, ¶ 18, 640 N.W.2d 460, 463).

## Analysis and Decision

[¶10.] "[T]he Due Process Clause of the Fourteenth Amendment protects the fundamental right of parents to make decisions concerning the care, custody, and control of their children." *Troxel v. Granville*, 530 U.S. 57, 66, 120 S. Ct. 2054, 2060, 147 L. Ed. 2d 49 (2000). Because "there is a presumption that fit parents act in the best interests of their children[,]" *id.* at 68, 120 S. Ct. at 2061, a state may not "infringe on the fundamental right of parents to make child rearing decisions simply because a state judge believes a 'better' decision could be made[,]" *id.* at 72-73, 120 S. Ct. at 2064. "Accordingly, so long as a parent adequately cares for his or her children (i.e., is fit), there will normally be no reason for the State to inject itself into the private realm of the family . . . ." *Id.* at 68-69, 120 S. Ct. at 2061. However, this presumption may succumb to extraordinary circumstances—such as the unfitness of the parent. *See id.* at 68, 120 S. Ct. at 2061 (indicating state interference must be justified by "special factors" and then discussing the lack of allegations or findings that mother was an unfit parent); *Clough*, 2008 S.D. 125, ¶ 22, 759 N.W.2d at 306 ("[A] fit parent is entitled to . . . deference only when there are no extraordinary circumstances."). The presence of such circumstances may be proven only by clear and convincing evidence. *Veldheer v. Peterson*, 2012 S.D. 86, ¶ 20, 824 N.W.2d 86, 93.

[¶11.]     We have previously recited some of the extraordinary circumstances that can justify state interference with parental rights. *See, e.g., Clough*, 2008 S.D. 125, ¶ 10, 759 N.W.2d at 302. The South Dakota Legislature codified these circumstances in SDCL 25-5-29 and -30. According to SDCL 25-5-29,

> [a] parent's presumptive right to custody of his or her child may be rebutted by proof:
>
> (1) That the parent has abandoned or persistently neglected the child;
>
> (2) That the parent has forfeited or surrendered his or her parental rights over the child to any person other than the parent;
>
> (3) That the parent has abdicated his or her parental rights and responsibilities; or
>
> (4) That other extraordinary circumstances exist which, if custody is awarded to the parent, would result in serious detriment to the child.

The extraordinary circumstances referred to by SDCL 25-5-29(4) are defined in SDCL 25-5-30:

> Serious detriment to a child may exist whenever there is proof of one or more of the following extraordinary circumstances:
>
> (1) The likelihood of serious physical or emotional harm to the child if placed in the parent's custody;
>
> (2) The extended, unjustifiable absence of parental custody;
>
> (3) The provision of the child's physical, emotional, and other needs by persons other than the parent over a significant period of time;
>
> (4) The existence of a bonded relationship between the child and the person other than the parent sufficient to cause significant emotional harm to the child in the event of a change in custody;
>
> (5) The substantial enhancement of the child's well-being while under the care of a person other than the parent;
>
> (6) The extent of the parent's delay in seeking to reacquire custody of the child;

(7) The demonstrated quality of the parent's commitment to raising the child;

(8) The likely degree of stability and security in the child's future with the parent;

(9) The extent to which the child's right to an education would be impaired while in the custody of the parent; or

(10) Any other extraordinary circumstance that would substantially and adversely impact the welfare of the child.

[¶12.]       In this case, the circuit court concluded several extraordinary circumstances rebutted Tony's parental right to custody.[3]  First, the court concluded that Tony had abandoned or persistently neglected M.A. (SDCL 25-5-29(1)). Second, the court determined that M.A. would suffer serious detriment by the emotional harm inflicted in being uprooted from the only home she had ever known and relocated to an unfamiliar family in Arizona (SDCL 25-5-30(1)).  Finally, the court determined that Tosha had been M.A.'s primary caregiver since M.A. was less than six months old (SDCL 25-5-30(3)).  Tony argues that the circuit court erred in granting custody to Tosha because, according to Tony: (1) the court did not explicitly find that Tony was fit or unfit as a parent; (2) the court erred in considering Tosha's status as M.A.'s primary caregiver as an extraordinary circumstance; (3) the court erred in concluding that the emotional harm anticipated to result from uprooting M.A. constituted serious detriment; (4) the court erred in concluding that Tony had abandoned M.A.; and (5) the court failed to properly determine M.A.'s best interest.

[¶13.]       *1.*       ***Tony's fitness as a parent***

---

3.    Brittany testified that she was an unfit parent and that she thought it was best that Tosha continue caring for M.A. until Brittany completed substance-abuse treatment.

[¶14.]    Tony argues that the circuit court violated his constitutional rights by not explicitly determining whether he was a fit or unfit parent.[4]  Citing *Troxel*, 530 U.S. at 70, 120 S. Ct. at 2062, Tony essentially contends that had the court determined that he was a fit parent, his opinion as to the best custody arrangement for M.A. would have been afforded "at least some special weight" on review.  We have already squarely rejected the same argument in a previous case.  In *Clough*, a parent "argue[d] the circuit court gave no deference or special weight to her determination" as to what was in her child's best interest despite the fact that "there was no contention that she was an unfit parent[.]"  2008 S.D. 125, ¶ 21, 759 N.W.2d at 306.  We held that "[t]he language of *Troxel* clearly reflects that a fit parent is entitled to . . . deference only when there are no extraordinary circumstances."  *Id.* ¶ 22, 759 N.W.2d at 306.  Because the court relied on extraordinary circumstances other than parental unfitness, Tony's opinion was not entitled to any deference even if we assume that the circuit court failed to make a determination as to whether Tony was a fit parent.  Consequently, this argument is moot.

[¶15.]    ***2.    Primary caregiver status as extraordinary circumstance***

[¶16.]    Next, Tony argues that the court should not have viewed the fact that Tosha has been M.A.'s primary caregiver as an extraordinary circumstance warranting nonparental custody.  We also addressed this issue in *Clough*.  In that

---

4.    The circuit court did not explicitly state that Tony was an unfit parent. However, the court did say that "the short amount of time between [Tony's] criminal past and rehabilitation makes his fitness as a parent speculative at best."

case, the plaintiff initially sought custody, but after testing revealed he was not the child's biological father, he instead sought visitation rights. *Id.* ¶¶ 2-6, 759 N.W.2d at 300-01. The circuit court granted nonparental visitation in part because Clough "served as the primary caretaker for the minor child since the time of her birth until the time of hearing regarding custody and visitation[.]" *Id.* ¶ 16, 759 N.W.2d at 304. Because "[t]he provision of the child's physical, emotional, and other needs by persons other than the parent over a significant period of time" is an extraordinary circumstance, SDCL 25-5-29, -30(3), we held that "[t]his finding alone was sufficient to rebut [the parent's] presumptive rights[,]" *Clough*, 2008 S.D. 125, ¶ 16, 759 N.W.2d at 304.

[¶17.] Nevertheless, Tony contends that *Clough* is inapplicable for several reasons. First, Tony contends this Court applied a different standard of review in *Clough* than is applicable in this case. This claim is meritless. As outlined above, *see supra* ¶ 9, we review the circuit court's factual determinations under the clearly erroneous standard and its conclusions of law under the de novo standard. We employed the same standards in *Clough*. *Id.* ¶ 8, 759 N.W.2d at 301.

[¶18.] Second, Tony contends that *Clough* is distinguishable because it involved a question of visitation rather than custody. According to Tony, "[t]here is a significant difference between awarding custody and awarding visitation." Yet, we decided the visitation issue in *Clough* by adapting authorities discussing custody. *See id.* ¶ 10, 759 N.W.2d at 302 ("Although discussed in the analogous area of custody disputes, courts have identified a number of extraordinary circumstances that are sufficient to rebut the constitutional presumption of

deference due parents."). Specifically, we quoted *Meldrum v. Novotny*, a custody case. *Clough*, 2008 S.D. 125, ¶ 10, 759 N.W.2d at 302 (quoting *Meldrum*, 2002 S.D. 15, ¶ 58, 640 N.W.2d at 470-71 (Konenkamp, J., concurring in part)). As we noted in *Clough*, the rebutting circumstances outlined in *Meldrum* were codified in SDCL 25-5-29 and -30. Those statutes explicitly apply to "[a] parent's presumptive right to *custody*[.]" SDCL 25-5-29 (emphasis added). Therefore, the fact that *Clough* involved a question of visitation rather than custody is not a material distinction. *See Clough*, 2008 S.D. 125, ¶ 15, 759 N.W.2d at 304 ("[T]he right of visitation derives from the right of custody and is controlled by the same legal principles." (quoting *Cooper v. Merkel*, 470 N.W.2d 253, 255 (S.D. 1991))).

[¶19.]     Third, Tony contends that this case is distinguishable from *Clough* because the parent in *Clough* had never taken care of the child, but in this case, according to Tony, he fully supported and cared for M.A. for the few months after she was born and before she went to live with Tosha. Yet, Tony fails to explain how this distinction is material. One extraordinary circumstance sufficient to rebut a parent's presumptive right to custody occurs when a nonparent provides for "the child's physical, emotional, and other needs . . . over a significant period of time[.]" SDCL 25-5-29, -30(3). Whether a parent is fit is not part of the calculus under this section, per se.[5] Here, the circuit court found that Tosha had been M.A.'s primary caregiver since before M.A. was even six months old. At the time of the court's

---

5.    The United States Supreme Court has indicated that a fit parent is one who "adequately cares for his or her children[.]" *Troxel*, 530 U.S. at 68, 120 S. Ct. at 2061. Consequently, being a fit parent is relevant to SDCL 25-5-30(3) to the extent that the parent provides for the child's physical, emotional, and other needs.

decision, M.A. was nearly four years old. Therefore, Tosha had been M.A.'s primary caregiver for approximately three-and-one-half years—a length of time likely extending back farther than M.A.'s memory. This length of time is comparable to the four-year period held to be an extraordinary circumstance in *Clough*.

[¶20.]    In light of the foregoing, *Clough* is not materially distinguishable from the present case. Here, Tosha has undisputedly been M.A.'s primary caregiver for the vast majority of M.A.'s life. Therefore, as in *Clough*, "[t]his finding alone was sufficient to rebut [Tony's] presumptive rights as a parent under SDCL 25-5-29(4) and 25-5-30(3)[.]" *Clough*, 2008 S.D. 125, ¶ 16, 759 N.W.2d at 304. Because we so conclude, it is not necessary to review the circuit court's alternate findings of emotional harm and abandonment.

[¶21.]    **3.    M.A.'s best interest**

[¶22.]    Finally, Tony contends that the circuit court failed to determine whether placement with Tosha was in M.A.'s best interest. This claim is meritless. The court explicitly stated: "The [c]ourt . . . finds that it is in M.A.'s best interest for Tosha to retain custody of her." This finding followed the court's findings and conclusions that Tony had not and could not independently provide for all of M.A.'s needs. In contrast, the court also found that

> Tosha provides for all of M.A.'s daycare, medical, education, clothing, food, and daily needs. Tosha provides love and guidance to M.A. Tosha is the only parental figure M.A. knows, and they have a very strong bond. Tosha continues to provide a nurturing stable, secure, and drug free home for M.A.

In light of these findings and the explicit finding on M.A.'s best interest, it is clear that the court properly considered M.A.'s best interest in deciding that Tosha should continue to have custody over M.A.

## Conclusion

[¶23.]     The record reflects clear and convincing evidence that Tosha has been M.A.'s primary caregiver for almost all of M.A.'s life.  This extraordinary circumstance is sufficient to rebut Tony's presumptive rights.  Because the circuit court based its decision to grant nonparental custody to Tosha on this extraordinary circumstance, it was not required to determine whether Tony is a fit parent.  The court also properly considered which custody arrangement was in M.A.'s best interest.  Therefore, we affirm.

[¶24.]     ZINTER, SEVERSON, and WILBUR, Justices, concur.

[¶25.]     KERN, Justice, deeming herself disqualified, did not participate.