#27835-r-JMK
**2018 S.D. 19**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*


CHRISTOPHER HOWLETT,                    Plaintiff and Appellant,

    v.

KARLYN STELLINGWERF,                    Defendant,

    and

AMBER STELLINGWERF,                    Defendant and Appellee.


\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE SECOND JUDICIAL CIRCUIT
MINNEHAHA COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE JOHN PEKAS
Judge

\* \* \* \*


JANET C. OLSON
Sioux Falls, South Dakota                    Attorney for plaintiff
                                             and appellant.


JASON R. ADAMS
Tschetter & Adams Law
  Offices, PC
Sioux Falls, South Dakota                    Attorneys for defendant
                                             and appellee.

\* \* \* \*

CONSIDERED ON BRIEFS
ON OCTOBER 2, 2017
OPINION FILED **02/28/18**

#27835

KERN, Justice

[¶1.]     Christopher Howlett appeals from an order granting primary physical custody of his minor child to her maternal grandmother.  Howlett argues the circuit court erred by analyzing the issue as a custody case between parents rather than between a parent and a third party.  Further, Howlett contends the grandmother failed to rebut his presumptive right to custody.  We reverse and remand.

## Facts and Procedural History

[¶2.]     Howlett (Father) and Karlyn Stellingwerf (Mother) are the biological parents of L.S.  In June 2011, Father, a 42-year-old married man, initiated a sexual relationship with Mother, who was sixteen years old.  Mother became pregnant as a result.  At the time of the relationship, Mother lived with her mother Amber Stellingwerf (Grandmother) and Mother's two younger siblings, a thirteen-year-old sister and a six-year-old brother with special needs.  Grandmother obtained a temporary protection order against Father because Mother continued to visit him despite Grandmother's wishes.  The temporary protection order was later dismissed.  Father had little communication with Mother during her pregnancy.

[¶3.]     On September 22, 2012, Mother gave birth to a baby girl, L.S.  Mother continued living with Grandmother.  Within a year of L.S.'s birth, Mother briefly ran away from home, leaving L.S. with a friend.  Mother's friend called the Department of Social Services, who placed L.S. with a foster family for two weeks before releasing L.S. into Grandmother's care.  According to Father, DSS did not involve him in the case because L.S.'s birth certificate did not list him as the father.  Further, it became difficult to maintain contact with Mother as she did not have a

consistent residence or workplace. Grandmother disputes this, claiming Father neither cared about the pregnancy nor attempted to be involved with raising L.S. By the time of her first birthday, L.S. was in the primary care of Grandmother.

[¶4.] In May 2015, Grandmother petitioned to become guardian and conservator of L.S. On May 28, 2015, the court handling the guardianship proceeding granted the petition and appointed Grandmother as temporary guardian and conservator. Shortly thereafter, Father served Mother and Grandmother with a summons and complaint seeking to terminate the temporary guardianship and to obtain legal and physical custody of L.S. Grandmother counterclaimed, requesting dismissal of Father's complaint, permanent guardianship over L.S., child support, and attorney's fees.[1] Mother did not respond to Father's summons and complaint. On July 15, 2015, Father filed a motion for interim visitation in the custody case, which was assigned to a different judge. The custody court—which is the circuit court appealed from in this case—held a hearing and deferred ruling. The parties later agreed to additional visitation through stipulation and agreement.

---

1. On August 14, 2017, Mother filed a motion with this Court for an order remanding the case to the circuit court to place L.S. in her custody. Father responds that under SDCL 15-26A-32, all circuit court proceedings are stayed until resolution of the appeal. We agree. Further, Mother's pleading, whether considered as a brief or as a motion for a new trial, is untimely. SDCL 15-26A-75 provides that the time for filing an appellee's brief is 45 days after service of appellant's brief. Father submitted his brief on November 30, 2016, making her August 2017 submission untimely. Additionally, a motion for a new trial must be filed within 60 days after commencement of the appeal. SDCL 15-26A-80. Therefore, we decline to grant Mother's motion for remand.

[¶5.] On August 27, 2015, and September 2, 2015, the circuit court in the custody case held a trial. Mother, Grandmother, and Father testified. Mother advised the court she was not seeking primary custody of L.S. because she had a pending felony charge for possession of a controlled substance, was homeless at the time, and felt it was in L.S.'s best interests to remain with Grandmother. The court also heard testimony from L.S.'s counselor and Dr. Himler, a licensed psychologist called as an expert witness by Father. Dr. Himler reviewed footage of one of Father's visits with L.S. and testified about Father's interactions with her. At the conclusion of the evidence, the court made oral findings, applying factors taken from *Fuerstenberg v. Fuerstenberg*, 1999 S.D. 35, 591 N.W.2d 798, to the evidence. In the court's view, because Mother "turned over her authority to [Grandmother] to be the guardian of [L.S.] . . . really this [was] a case between [Father] and [Grandmother.]" The court denied the motion to terminate the guardianship and awarded Grandmother full physical custody of L.S. while granting Father liberal visitation rights.

[¶6.] Father filed a motion to reconsider, arguing the circuit court should evaluate the case as a guardianship proceeding. Father also argued that even if the court viewed the case as a custody proceeding, it should analyze the issue under the provisions of SDCL 25-5-29 and 25-5-30, which govern when a nonparent may be granted custody. On November 23, 2015, the court held a hearing on Father's motion. Grandmother agreed at the hearing that SDCL "25-5-29 and 25-5-30 are the appropriate statutes to be looking at when it is a non-parent looking at custody." However, Grandmother claimed that because Father filed a custody

action against her and Mother, application of *Fuerstenberg* was nevertheless appropriate. Further, Grandmother argued that transferring custody to Father would be seriously detrimental to L.S., highlighting evidence of extraordinary circumstances enumerated in SDCL 25-5-30 that justify a grant of custody to a nonparent.

[¶7.]    After hearing arguments from the parties, the court stated that if the guardianship had been terminated, then the case would be on a "different footing completely" and the court would have "no choice but to turn [L.S.] back over to [Father]. Unless, of course, [Grandmother] would file some sort of petition under Timmy's Law to go ahead and try and get custody of [L.S.] at that point." The court observed that "[w]hen . . . looking at visitation, whether it is visitation or custody, the [c]ourt has to consider the *Fuerstenberg* factors" and that "the reality is that we opened up custody[.]" In examining SDCL 25-5-29 and 25-5-30, the court stated that it believed it had touched on some of the extraordinary circumstances outlined in SDCL 25-5-30 at the prior hearing, highlighting the "bonded relationship in [SDCL 25-5-30(4)] between [L.S.] and, of course, [Grandmother.]" The court denied the motion and instructed Father to resolve the guardianship case with the guardianship court.

[¶8.]    Accordingly, Father filed a motion to terminate the temporary guardianship pending before the guardianship court. That court granted the motion and dismissed the case because the temporary guardianship ordered on May 28, 2015, expired of its own accord after 90 days pursuant to SDCL 29A-5-315.

#27835

With the guardianship resolved, Father again sought reconsideration from the custody court, which was denied.[2]

[¶9.] Father appeals,[3] arguing the circuit court deprived him of an important liberty interest as a parent. *See Troxel v. Granville*, 530 U.S. 57, 65, 120 S. Ct. 2054, 2060, 147 L. Ed. 2d 49 (2000) (observing that parents have a fundamental liberty interest "in the care, custody, and control of their children"). We consolidate the three issues raised by Father on appeal as follows:

---

2.    We acknowledge the difficulties presented when issues like custody and guardianship involving identical parties are handled by two different circuit court judges. The legislature addressed this problem in part in SDCL 29A-5-106, providing:

> If, while a guardianship petition pursuant to this chapter seeking custody by a person other than the parent is pending, an action is commenced pursuant to chapter 25-4, 25-5, 25-5A, 25-6, or 25-8, the court may, in its discretion, dismiss the guardianship proceeding and defer the child custody matter to the other proceeding or considering the stage of the proceedings, judicial economy, and best interests of the child, retain jurisdiction and establish the guardianship, or enter an appropriate protection order pending resolution of the pending proceedings.

From our review of the record, it is unclear whether the court or counsel sought to have the cases heard by one court.

3.    In her jurisdictional statement, Grandmother claims that the circuit court did not issue a "final order from which an appeal may be taken" under SDCL 15-26A-3. *See In re Estate of Geier*, 2012 S.D. 2, ¶ 7, 809 N.W.2d 355, 357. Grandmother contends that the court's "order did not conclusively or finally dispose of the issues on appeal, as the trial court ordered that a review hearing be held within three months" and because the court stated that it wanted to transition to a shared parenting arrangement. However, "[t]he test of finality is the substance of the decision appealed from rather than its form or name." *Riede v. Phillips*, 277 N.W.2d 720, 722 (S.D. 1979). We conclude that the March 22, 2016 order granting Grandmother full physical custody constituted a final order from which an appeal could be taken.

> Whether the circuit court erred by analyzing the case as a custody dispute between parents rather than between a parent and a nonparent.

## Analysis and Decision

[¶10.]     Father claims that the circuit court erred by applying the *Fuerstenberg* factors in analyzing this custody dispute.[4] According to Father, *Fuerstenberg* does not apply when a nonparent seeks custody of a parent's child. Father contends that for a nonparent like Grandmother to seek custody, she must first offer proof under SDCL 25-5-29 rebutting Father's presumptive right to custody. Further, Father argues that the circuit court failed to evaluate whether Grandmother possessed standing in the first place.

[¶11.]     We first address the issue of standing. "Whether a party has standing to maintain an action is a question of law reviewable by this Court de novo." *Arnoldy v. Mahoney*, 2010 S.D. 89, ¶ 12, 791 N.W.2d 645, 652. Father contends that Grandmother failed to establish standing under SDCL 25-5-29 and that without standing, Grandmother could not call witnesses and present evidence to rebut his presumptive right to custody. Father concedes that he admitted at trial that Grandmother had standing. However, Father argues the court made no finding on this issue. Grandmother argues that the circuit court heard evidence that she acted

---

4.     Father alternatively argues that the court should have analyzed the issue as a guardianship case under SDCL chapter 29A-5. Father acknowledges that guardianship and custody actions can proceed simultaneously. Further, the guardianship court granted Father's motion to terminate the temporary guardianship because it had already expired. Nevertheless, Father takes issue with the fact that Grandmother requested only a permanent guardianship in her counterclaim yet received full physical custody. However, a court may grant a form of relief "even if the party has not demanded such relief in his pleadings." SDCL 15-6-54(c).

as L.S.'s primary caretaker and that L.S. formed a close bond with her, thereby establishing standing under SDCL 25-5-29. We agree with Grandmother that she possesses standing. "[S]tanding requires that an individual 'maintain a "personal stake" in the outcome of the litigation . . . .'" *In re Baby Boy K.*, 1996 S.D. 33, ¶ 60, 546 N.W.2d 86, 102 (quoting *Gollust v. Mendell*, 501 U.S. 115, 126, 111 S. Ct. 2173, 2180, 115 L. Ed. 2d 109, 121 (1991)). Grandmother undoubtedly has a personal stake in the outcome of this case; and SDCL 25-5-29 confers standing to a party other than the parent, contemplating precisely the kind of issue now before us. Further, the circuit court's findings of fact and conclusions of law reflect recognition of these facts. Although the court made no formal ruling on the matter, it is undisputed that Grandmother has standing, so the issue presents no bar to the current litigation.

[¶12.] Father next argues the circuit court erroneously applied the *Fuerstenberg* factors, impinging on his constitutional rights as a parent. Father contends SDCL 25-5-29 and 25-5-30 govern when a nonparent attempts to obtain custody from a parent. "Statutory interpretation is a question of law, reviewed de novo." *Veldheer v. Peterson*, 2012 S.D. 86, ¶ 14, 824 N.W.2d 86, 92. Cases involving an award of custody to nonparents allegedly in violation of the parent's constitutional rights are reviewed de novo. *Id.* We review a court's factual findings for clear error, meaning this Court "will overturn findings of fact on appeal only when a complete review of the evidence leaves the Court with a definite and firm conviction that a mistake has been made." *Clough v. Nez*, 2008 S.D. 125, ¶ 8, 759 N.W.2d 297, 301.

[¶13.]     "The liberty interest at issue in this case—the interest of parents in the care, custody, and control of their children—is perhaps the oldest of the fundamental liberty interests recognized by [the United States Supreme Court]." *Troxel*, 530 U.S. at 65, 120 S. Ct. at 2060. In *Fuerstenberg*, this Court stated that "[b]etween *parents* adversely claiming custody, neither may be preferred over the other." 1999 S.D. 35, ¶ 22, 591 N.W.2d at 806-07 (emphasis added). The nonexclusive factors examined in *Fuerstenberg* include: parental fitness; which parent can provide a more stable home; which parent has served as the primary caretaker; the child's preference, if the child is of sufficient age to express a preference; whether a parent has engaged in harmful misconduct; and whether siblings would be separated. *Fuerstenberg*, 1999 S.D. 35, ¶¶ 24-32, 591 N.W.2d at 808-810. Additionally, to "modify a custody decree rendered after a contested hearing, the moving party must show a substantial change in circumstances." *Id.* ¶ 33, 591 N.W.2d at 810.

[¶14.]     However, Grandmother is not a parent. We have observed that "[d]isputes between parents and grandparents . . . are not contests between equals." *In re A.L.*, 2010 S.D. 33, ¶ 22, 781 N.W.2d 482, 488 (holding that a court must give special weight to a parent's decision not to allow grandparents visitation with their grandchildren). This is because unlike nonparents, "[n]atural parents have a fundamental right to the care, custody, and control of their children." *Veldheer*, 2012 S.D. 86, ¶ 19, 824 N.W.2d at 93. Prior to the passage of SDCL 25-5-29, we "recognized that 'in legal contests between a parent and a nonparent for the custody of a child the threshold question is: Is the parent unfit to have the custody of the

child?'" *Meldrum v. Novotny*, 2002 S.D. 15, ¶ 20, 640 N.W.2d 460, 463 (quoting *In re Guardianship of Sedelmeier*, 491 N.W.2d 86, 87 (S.D. 1992)). In response to the *Meldrum* decision, the Legislature enacted SDCL 25-5-29 to guide circuit courts in making these decisions.[5] SDCL 25-5-29 provides that generally:

> [T]he court may allow any person other than the parent of a child to intervene or petition a court of competent jurisdiction for custody or visitation of any child with whom he or she has served as a primary caretaker, has closely bonded as a parental figure, or has otherwise formed a significant and substantial relationship. It is presumed to be in the best interest of a child to be in the care, custody, and control of the child's parent, and the parent shall be afforded the constitutional protections as determined by the United States Supreme Court and the South Dakota Supreme Court. A parent's presumptive right to custody of his or her child may be rebutted by proof:
>
> > (1) That the parent has abandoned or persistently neglected the child;
> >
> > (2) That the parent has forfeited or surrendered his or her parental rights over the child to any person other than the parent;
> >
> > (3) That the parent has abdicated his or her parental rights and responsibilities; or
> >
> > (4) That other extraordinary circumstances exist which, if custody is awarded to the parent, would result in serious detriment to the child.

[¶15.] Under SDCL 25-5-29(4), a nonparent may establish by clear and convincing evidence extraordinary circumstances warranting placement of a child with a nonparent. *Aguilar v. Aguilar*, 2016 S.D. 20, ¶¶ 10-11, 877 N.W.2d 333, 336-37. SDCL 25-5-30 provides a nonexhaustive list of such circumstances. We have held that a showing of parental unfitness is unnecessary if a court awards custody

---

5. Also known as Timmy's Law for the child in that case.

to a nonparent based on extraordinary circumstances. *Aguilar*, 2016 S.D. 20, ¶ 14, 877 N.W.2d at 338.

[¶16.] Yet here, the circuit court did not examine whether Father's presumptive right to custody of L.S. was rebutted under SDCL 25-5-29 and 25-5-30. Rather, the court arrived at its decision by applying the *Fuerstenberg* factors with respect to Father, Mother, and a nonparent, Grandmother. In its findings of fact and conclusions of law dated March 22, 2016, the court concluded that "[i]t is in the best interests of [L.S.] that she remain with [Grandmother]; therefore, Defendant, [Grandmother], shall have full physical custody of the minor child, [L.S.]" Although there is certainly some overlap between the *Fuerstenberg* factors and the extraordinary circumstances outlined in SDCL 25-5-30, the court explicitly adopted the framework of the former while making only limited oral references to the latter. Due to the constitutional protections afforded to parents, a clearer examination of the circumstances warranting a grant of custody to Grandmother under SDCL 25-5-29 and 25-5-30—the correct framework under which to analyze custody disputes between parents and nonparents—is required.

[¶17.] Grandmother, however, claims that Father failed to object to the court's use of the *Fuerstenberg* factors and therefore waived the issue on appeal. *See State v. Uhing*, 2016 S.D. 93, ¶ 13, 888 N.W.2d 550, 555. Grandmother alleges that Father "failed to timely make these arguments" by raising them "for the first time on [his] motion to reconsider." However, Grandmother cites no authority for the proposition that raising an argument for the first time on a motion to reconsider—not on appeal—waives the argument.

[¶18.] Moreover, Father presented the argument to the circuit court, and the court had an opportunity to consider and rule on it. *See In re M.D.D.*, 2009 S.D. 94, ¶ 11, 774 N.W.2d 793, 796-97 (holding that failure to bring legal or factual arguments to the circuit court's attention waives them on appeal). At the conclusion of the September 2, 2015 custody hearing, the court announced its findings and recited the *Fuerstenberg* factors. The court then indicated it would accept proposed findings of fact and conclusions of law, stating:

> Then if you guys have objections you can note your objections. Unless you want to waive Findings and Conclusions on the record. You're more than empowered to do that, but otherwise I have to have them. You guys raised a lot of objections, and guess what? I didn't give anybody full relief, so if somebody wants to appeal it we have to have your Findings and Conclusions.

Father included in his proposed conclusions of law the requirement that a nonparent must first offer proof under SDCL 25-5-29 to rebut a parent's presumptive right to custody. Similarly, in his motion to reconsider, Father urged the court to analyze the issue under SDCL 25-5-29. At the November 23, 2015 motions hearing, Father again reiterated his position. The court acknowledged Father's disagreement with its application of the *Fuerstenberg* factors. Nevertheless, it viewed the proceeding as a custody dispute between equally situated custodians. Because Father complied with the court's request to note objections in its proposed findings of fact and conclusions of law and repeated those concerns in his motion to reconsider, we conclude that Father appropriately preserved the issue for appeal.

[¶19.] Grandmother also argues that even when analyzing the case under SDCL 25-5-29, "there were many extraordinary circumstances [justifying placement

of] L.S. with Grandmother, including Grandmother's primary caretaker status, the strong bond L.S. had with Grandmother and her other two children, and the emotional harm to L.S. if she were taken out of the only home she ever knew," which "was sufficient to cause significant emotional harm." Grandmother analogizes this case to *Aguilar*. In *Aguilar*, we affirmed an order awarding a nonparent—the child's aunt—custody, citing the fact that the aunt had been the primary caretaker for the child for all of the child's life. 2016 S.D. 20, ¶ 20, 877 N.W.2d at 339.

[¶20.] However, in *Aguilar*, the circuit court properly analyzed the issue using SDCL 25-5-29. *Id.* ¶ 12, 877 N.W.2d at 337. As noted above, despite the overlap between the *Fuerstenberg* factors and the extraordinary circumstances enumerated in SDCL 25-5-29 and 25-5-30, such as whether a nonparent has acted as primary caretaker of a child, the two are nonetheless separate frameworks. Moreover, the circuit court made only a limited finding in its March 22, 2016 findings of fact and conclusions of law regarding Grandmother's status as primary caretaker, namely: "Grandmother has been the caretaker in the past." The court's other findings suggest that Father's interactions with L.S. have been positive; that Father has not abandoned or neglected L.S.; and that Father has not forfeited, surrendered, or abdicated his parental rights. As such, the court's findings of fact and conclusions of law insufficiently analyze the extraordinary circumstances outlined in SDCL 25-5-30.

[¶21.] Father requests appellate attorney's fees in the amount of $16,128.90 pursuant to SDCL 15-17-38 and SDCL 15-26A-87.3. Mother requests $7,798.73. We decline to award either party any fees.

## Conclusion

[¶22.] For a variety of reasons, parents may be unable or unwilling to care for their children.[6] Under such circumstances, third-party caretakers—such as grandparents or other relatives—provide a safety net for children. The Legislature thus enacted SDCL 25-5-29 and 25-5-30 to guide circuit courts in resolving custody disputes between parents and nonparents. Grandmother possessed standing as a nonparent seeking custody due to extraordinary circumstances. However, because the circuit court analyzed the dispute using the *Fuerstenberg* factors, which apply only in cases between parents, we reverse its order granting Grandmother full physical custody and remand to the court to apply the provisions of SDCL 25-5-29 and SDCL 25-5-30.

[¶23.] GILBERTSON, Chief Justice, and ZINTER and SEVERSON, Justices, and WILBUR, Retired Justice, concur.

[¶24.] JENSEN, Justice, not having been a member of the Court at the time this action was submitted to the Court, did not participate.

---

6. Obstacles to caregiving may include substance abuse, addiction, mental or physical illness, homelessness, or unforeseen circumstances.