#28243-a-DG
**2018 S.D. 32**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

WESTON LEE WINEGEART,                    Plaintiff and Appellee,

v.

ERYN MARIE WINEGEART,                    Defendant and Appellant.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE SIXTH JUDICIAL CIRCUIT
HUGHES COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE JOHN L. BROWN
Judge

\* \* \* \*

KATIE J. THOMPSON of
Olinger, Lovald, McCahren,
  Van Camp & Konrad, P.C.
Pierre, South Dakota                    Attorneys for plaintiff and
                                        appellee.


AL ARENDT
Pierre, South Dakota                    Attorney for defendant and
                                        appellant.

\* \* \* \*

CONSIDERED ON BRIEFS
ON FEBRUARY 12, 2018
OPINION FILED **04/11/18**

#28243

GILBERTSON, Chief Justice

[¶1.]        Eryn Marie Winegeart appeals the circuit court's order to sell real

estate she jointly owned with Weston Lee Winegeart, her former spouse.  The order

permits the payment of realtor fees, but Eryn asserts the parties orally agreed in

mediation to sell the property without paying realtor fees.  We affirm.

**Facts and Procedural History**

[¶2.]        Weston and Eryn Winegeart first married in 2005, divorced,[1] then

married for a second time in 2012.  The parties owned a home in Pierre, where they

resided with their three children: B.C., K.L., and J.C.  On October 4, 2016, Weston

filed for divorce.  Eryn subsequently obtained a protection order against Weston,

and both parties vacated the home.  Weston moved to Texas.

[¶3.]        On January 9, 2017, the circuit court ordered the parties to undergo

mediation.  The parties attended one mediation session on March 9.  After the

session, Weston signed an agreement with a real-estate agent to list the jointly

owned real estate.  The listing agreement included a commission for the realtor.  On

March 10, a third party signed an agreement to purchase the property for $330,000.

Eryn refused to sign the purchase agreement, asserting that during mediation,

Weston had orally agreed to sell the property without paying for a realtor.

[¶4.]        On March 22, 2017, Weston filed a motion asking the court to order

Eryn to sign the purchase agreement.  The parties deposed the mediator on

March 30.  Over the objection of Weston's attorney, the mediator testified that it

was his "understanding . . . that there were no Realtor commissions to be paid, that

---

1.      The first divorce occurred in Oklahoma.

-1-

this was going to be a private sale." The court held a hearing to consider the motion on March 31. The court found that the parties had not entered into an enforceable oral agreement in regard to realtor fees. The court granted Weston's request and ordered Eryn to sign the purchase agreement.

[¶5.] On April 15, 2017, after the circuit court issued its order requiring Eryn to sign the purchase agreement, the parties entered into a property-settlement agreement. On April 18, the circuit court granted a divorce on the grounds of irreconcilable differences. The court determined custody, set child support, and incorporated the parties' April 15 property-settlement agreement.

[¶6.] Eryn appeals the circuit court's March 31, 2017 order requiring her to sign the purchase agreement. She asks this Court to enter an order requiring Weston to pay her "the realtor fees incurred as a result of his violation of the oral mediated agreement." Thus, Eryn raises the following issue: Whether the court erred by ordering her to sign the purchase agreement.

## Standard of Review

[¶7.] This appeal involves interpreting South Dakota's Uniform Mediation Act, SDCL chapter 19-13A. Statutory interpretation is a question of law reviewed de novo. *Pitt-Hart v. Sanford USD Med. Ctr.*, 2016 S.D. 33, ¶ 7, 878 N.W.2d 406, 409. The circuit court's factual findings are reviewed under the clearly erroneous standard. *Aguilar v. Aguilar*, 2016 S.D. 20, ¶ 9, 877 N.W.2d 333, 336.

## Analysis and Decision

[¶8.] Eryn argues the circuit court erred by entering its March 31, 2017 order requiring her to sign the purchase agreement. Eryn asserts that the parties

entered into an enforceable oral agreement during mediation on March 9, 2017, and that the court "abused its discretion in refusing to enforce" that agreement. Weston raises a number of reasons to reject Eryn's argument. First, as a matter of first impression in South Dakota, he argues that communications occurring in the course of mediation are confidential and cannot be used to prove the existence of an agreement. Second, he argues that even if such communications could be used as evidence of an oral agreement, Eryn signed a confidentiality agreement that prevents relying on those communications. Third, he argues that even if the parties' mediation communications could be used as evidence to establish an oral agreement in this case, the circuit court's factual finding that he did not agree to sell the home without paying realtor fees is not clearly erroneous. And finally, he argues that even if Eryn is correct that the parties entered into such an agreement on March 9, 2017, that agreement was superseded by the parties' April 15, 2017 agreement.

[¶9.]        The question whether an oral agreement arising out of mediation is enforceable is a question of first impression in this jurisdiction. South Dakota adopted the Uniform Mediation Act (UMA) in 2008. SDCL chapter 19-13A. Under the UMA, a mediation communication "means a statement, whether oral or in a record or verbal or nonverbal, that occurs during a mediation or is made for purposes of considering, conducting, participating in, initiating, continuing, or reconvening a mediation or retaining a mediator." SDCL 19-13A-2(2). As a general rule, "a mediation communication is privileged . . . and is not subject to discovery or admissible in evidence in a proceeding[.]" SDCL 19-13A-4(a); *see also* SDCL 19-19-

515 ("All verbal or written information relating to the subject matter of a mediation which is transmitted between any party to a dispute and a mediator or any agent, employee, or representative of a party or a mediator is confidential."). Thus, "[i]n a proceeding, . . . [a] mediation party may refuse to disclose, and may prevent any other person from disclosing, a mediation communication." SDCL 19-13A-4(b)(1).

[¶10.]     The exceptions to the mediation-communication privilege enumerated in SDCL 19-13A-6 seem to support the conclusion that an oral agreement occurring in the course of mediation is unenforceable. The UMA specifically excepts mediation communications "in an *agreement evidenced by a record* signed by all parties to the agreement[.]" SDCL 19-13A-6(a)(1) (emphasis added). The specific inclusion of *written* agreements in SDCL 19-13A-6 implies that *nonwritten* agreements are not excepted from the mediation-communication privilege. *See In re Estate of Flaws*, 2012 S.D. 3, ¶ 20, 811 N.W.2d 749, 754 (applying the canon of construction *expressio unius est exclusio alterius*). Indeed, as the Utah Supreme Court has noted, the Uniform Law Commission (ULC) "explained in a comment to the Uniform Mediation Act that oral agreements were intentionally *not* included in the list of exceptions to mediation privilege." *Reese v. Tingey Constr.*, 177 P.3d 605, 609-10 (Utah 2008) (emphasis added). As the ULC explained, the exception for written agreements

> is noteworthy only for what is not included: oral agreements. The disadvantage of exempting oral settlements is that nearly everything said during a mediation session could bear on either whether the parties came to an agreement or the content of the agreement. In other words, an exception for oral agreements has the potential to swallow the rule of privilege. As a result, mediation participants might be less candid, not knowing whether a controversy later would erupt over an oral agreement.

*Unif. Mediation Act* § 6 cmt. 2 (Unif. Law Comm'n, amended 2003).

[¶11.]        Judicial opinions from other jurisdictions agree that only written agreements are enforceable under the UMA.  Aside from South Dakota, the UMA has been adopted by the District of Columbia and by the States of Hawaii, Idaho, Illinois, Iowa, Nebraska, New Jersey, Ohio, Utah, Vermont, and Washington.[2]  Of these eleven other jurisdictions, it appears that five have had occasion to address this question, and all five suggest that an oral agreement is unenforceable. *Billhartz v. Billhartz*, No. 5-13-0580, 2015 WL 2058961, at *8 (Ill. App. Ct. May 4, 2015) ("The Uniform Mediation Act . . . contemplates that a signed, written agreement is admissible and enforceable following mediation and that oral communications generally are not."); *Shriner v. Friedman Law Offices, P.C., LLO*, 877 N.W.2d 272, 290 (Neb. 2016) ("The Uniform Mediation Act . . . establishes a privilege for mediation communications, which generally are not subject to discovery or admissible in evidence in a proceeding."); *Willingboro Mall, Ltd. v. 240/242 Franklin Ave., LLC*, 71 A.3d 888, 890 (N.J. 2013) ("[P]arties that intend to enforce a settlement reached at mediation must execute a signed written agreement."); *Akron v. Carter*, 942 N.E.2d 409, 415-16 (Ohio Ct. App. 2010) (holding mediation communications "privileged and . . . neither discoverable nor admissible" where party sought to introduce those communications "in an effort to prove that an oral contract of settlement arose out of the mediation"); *Reese*, 177 P.3d at 610

---

2.      Legislation proposing the adoption of the UMA has been introduced in Massachusetts and New York.  This information was obtained from the Uniform Law Commission, http://www.uniformlaws.org/Act.aspx?title=Mediation%20Act (last visited April 10, 2018).

(rejecting an oral-agreement exception to the mediation-communication privilege and concluding that "a court can enforce only a mediation agreement that has been reduced to writing"). While these decisions are not per se binding on this Court, the Legislature has instructed that "[i]n applying and construing this chapter, consideration should be given to the need to promote uniformity of the law with respect to its subject matter among States that enact it." SDCL 19-13A-13; *see also* SDCL 2-14-13 ("Whenever a statute appears in the code of laws enacted by § 2-16-13 which, from its title, text, or source note, appears to be a uniform law, it shall be so interpreted and construed as to effectuate its general purpose to make uniform the law of those states which enact it.").

[¶12.]     Even so, additional analysis is required to apply the foregoing opinions in this case. These opinions are premised on the evidentiary reality that if mediation communications are not subject to discovery or admissible in evidence, then generally the only way to prove the terms of an agreement is to reduce it to a signed writing. *See, e.g.*, *Reese*, 177 P.3d at 609-10. But South Dakota's version of the UMA potentially provides another avenue for establishing the terms of a settlement reached during mediation that has not been reduced to writing. Under § 7(b)(1) of the UMA, "[a] mediator may disclose . . . whether a settlement was reached[.]" But unlike every other jurisdiction that has adopted the UMA, the South Dakota Legislature modified the language of our corresponding statute; thus,

in South Dakota, a mediator may disclose "whether a settlement was reached *and if so the terms thereof*[.]" SDCL 19-13A-7(b)(1) (emphasis added).[3]

[¶13.]    The foregoing invites the question whether a mediator may disclose the terms of an *oral* settlement reached during mediation. On one hand, an oral settlement is a settlement, and SDCL 19-13A-7(b)(1) permits a mediator to disclose the terms of a settlement. But on the other hand, "[e]xcept as otherwise provided in § 19-13A-6, a mediation communication is privileged as provided in subsection (b) and is not subject to discovery or admissible in evidence in a proceeding unless waived or precluded as provided by § 19-13A-5." SDCL 19-13A-4(a). Thus, SDCL 19-13A-4(a) omits SDCL 19-13A-7(b)(1) from the list of circumstances under which the mediation-communication privilege does not apply. So the choice must be made whether to add SDCL 19-13A-7(b)(1) to SDCL 19-13A-4(a)'s list of circumstances under which the privilege does not apply, or to read the word *settlement* in SDCL 19-13A-7(b)(1) to permit the disclosure of the terms of only a settlement that has been reduced to writing.

---

3.    While the mediation acts of the District of Columbia and the States of Hawaii, Idaho, Illinois, Iowa, Nebraska, New Jersey, Ohio, Utah, Vermont, and Washington also permit a mediator to disclose "whether a settlement was reached," none of them permit a mediator to disclose the terms of such settlement. *See* D.C. Code § 16-4206 (West, Westlaw through Mar. 20, 2018); Haw. Rev. Stat. § 658H-7 (West, Westlaw through 2017 Reg. & Spec. Sess.); Idaho Code § 9-807 (West, Westlaw through 2d Reg. Sess. of 64th Legis.); 710 Ill. Comp. Stat. § 35/7 (West, Westlaw through 2018 P.A. 100-578); Iowa Code § 679C.107 (West, Westlaw through legislation effective Apr. 2, 2018, of 2018 Reg. Sess.); Neb. Rev. Stat. § 25-2936 (West, Westlaw through legislation effective Mar. 1, 2018, of 2d Reg. Sess. of 105th Legis.); N.J. Stat. Ann. § 2A:23C-7 (West, Westlaw through 2018 c.4 and J.R. No. 3); Ohio Rev. Code Ann. § 2710.06 (West, Westlaw through 2017 File 51); Utah Code Ann. § 78B-10-107 (West, Westlaw through 2017 1st Spec. Sess.); Vt. Stat. Ann. tit. 12, § 5718 (West, Westlaw through 2017-2018 Legis. Sess.); Wash. Rev. Code § 7.07.060 (West, Westlaw through 2018 Reg. Sess.).

[¶14.] SDCL 19-13A-7(b)(1) should not be read to permit a mediator to disclose the terms of a purported oral settlement reached during mediation. As noted above, the purpose of the mediation-communication privilege is to encourage participants to be candid by shielding their negotiations from later disclosure. *Unif. Mediation Act* § 6 cmt. 2. But if a mediator may disclose mediation communications under SDCL 19-13A-7(b)(1), then the purpose of the mediation-communication privilege can be easily subverted: while one party to a negotiation cannot disclose settlement negotiations occurring during mediation, the same evidence could be admitted by simply subpoenaing the mediator to testify. And as the ULC pointed out in the model act, "nearly everything said during a mediation session could bear on either whether the parties came to an agreement or the content of the agreement." *Unif. Mediation Act* § 6 cmt. 2. Thus, permitting a mediator to disclose the terms of a purported oral settlement also "has the potential to swallow the rule of privilege." *Id.* But perhaps most important of all, this narrow reading harmonizes SDCL 19-13A-7(b)(1) with its counterparts in other jurisdictions that have enacted the UMA, thereby carrying out the Legislature's directive to consider chapter 19-13A in light of other jurisdictions' treatment of the UMA. *See* SDCL 19-13A-13.

[¶15.] Even if SDCL 19-13A-7(b)(1) permitted a mediator to disclose mediation communications relating to a purported oral agreement, Eryn was still precluded under chapter 19-13A from introducing the mediator's testimony in this case. "[M]ediation communications are confidential to the extent agreed by the parties or provided by other law or rule of this State." SDCL 19-13A-8. In this case,

the parties entered into a confidentiality agreement prior to engaging in mediation.

Under that agreement, the parties agreed to the following provision:

> 5. Confidentiality: The parties and the mediator will abide by the following confidentiality provisions:
>
> > a. All discussions, representations and statements made during the mediation will be privileged as settlement negotiations. *The parties will not attempt to discover or use as evidence in any legal proceeding anything related to the mediation, including any communications or the thoughts, impressions or notes of the mediator.* No document produced in mediation which is not otherwise discoverable will be admissible by the parties in any legal proceedings for any purpose, including impeachment.
> >
> > b. The parties will not subpoena the mediator, any members of his staff or any legal records or documents of the mediator in any proceedings of any kind.
> >
> > c. The mediator will not discuss the mediation process or disclose any communications made during the process to any person except his staff as necessary.

(Emphasis added.) So regardless of whether the mediator's testimony regarding the terms of the purported oral settlement would normally be admissible under SDCL 19-13A-7(b)(1), that testimony is not admissible in this case by agreement of the parties.

[¶16.] Even if the mediator's testimony were admissible, Eryn still has the burden of proving the elements of a contract. The "[e]lements essential to existence of a contract are: (1) [p]arties capable of contracting; (2) [t]heir consent; (3) [a] lawful object; and (4) [s]ufficient cause or consideration." SDCL 53-1-2. "'There must be mutual assent or a meeting of the minds on all essential elements or terms in order to form a binding contract.' Whether there is mutual assent is a fact question determined by the words and actions of the parties." *Vander Heide v. Boke Ranch, Inc.*, 2007 S.D. 69, ¶ 20, 736 N.W.2d 824, 832 (quoting *Read v. McKennan*

*Hosp.*, 2000 S.D. 66, ¶ 23, 610 N.W.2d 782, 786). As noted above, a circuit court's "factual findings will not be disturbed unless they are clearly erroneous." *Aguilar*, 2016 S.D. 20, ¶ 9, 877 N.W.2d at 336.

[¶17.] The circuit court found that Eryn did not meet her burden of proving the parties had a meeting of the minds. During the hearing on Weston's motion to require Eryn to sign the purchase agreement, the court said: "I don't see a mediated agreement. I see a draft." Indeed, during that hearing, Eryn's attorney admitted that the first draft agreement he submitted following the mediation did not include a provision forbidding the payment of realtor fees. If anything, that draft supports Weston's claim that the parties did not reach an agreement regarding realtor fees during the March 9, 2017 mediation. Eryn's attorney also admitted at the hearing that the parties then revised the first draft several times, making numerous additions. Only then did Eryn's attorney produce a draft that included a provision forbidding the payment of realtor fees. And perhaps most telling, the April 15, 2017 agreement that Eryn signed explicitly states: "[P]arties *disagree* as to the employment of a real estate broker[.]" (Emphasis added.) In light of the foregoing, the court's factual finding that there was not a meeting of the minds is not clearly erroneous; even considering the mediator's testimony, "a complete review of the evidence" does not create "a definite and firm conviction that a mistake has been made." *Id.*

[¶18.] Finally, even if the mediator's testimony were admissible and the circuit court's factual finding on mutual assent were clearly erroneous, Eryn would still not be entitled to relief. As noted above, the parties both signed an agreement

#28243

dated April 15, 2017—after the purported oral agreement of March 9, 2017. "The execution of a contract in writing . . . supersedes all the oral negotiations or stipulations concerning its matter which preceded or accompanied the execution of the instrument." SDCL 53-8-5. The April 15 agreement includes the following provision:

> 1. COMPLETE AGREEMENT: Each of the parties is fully and completely informed of the financial and personal status of the other and each has given full thought to the making of this Agreement, and all obligations herein contained and *each of the parties understands the agreements and obligations assumed by the other* with the express understanding and agreement they *are in full satisfaction of all obligations for which each of the parties now has or might hereafter otherwise have toward the other*.

(Emphasis added.) Not only does the April 15 agreement not forbid the payment of realtor fees, it expressly acknowledges that the parties disagreed on that term:

> [T]he parties hereto agree that the Plaintiff shall market the family residence as expeditiously and in the most cost effective manner as possible; parties disagree as to the employment of a real estate broker; the minimum price the parties agree to will be the sum of $325,000. The parties agree that in the event the house is sold, all of the outstanding expenses, including advance taxes, closing costs, mortgage, and any other personal services owed shall be paid out of said sale proceeds. Any deficiency from the sale is Plaintiff's responsibility; and any profits shall be split equally between the parties.

Eryn cannot now modify the April 15 agreement by extrinsic evidence of an earlier purported agreement. *Roseth v. Roseth*, 2013 S.D. 27, ¶ 15, 829 N.W.2d 136, 142. Thus, the question whether the parties entered into an oral agreement on March 9, 2017, that forbade the payment of realtor fees is immaterial.

**Conclusion**

[¶19.]     Eryn is not entitled to relief.  South Dakota's Uniform Mediation Act does not permit a mediator to disclose the terms of a settlement produced in mediation unless that settlement has been reduced to writing.  Even if the mediator's testimony were normally admissible, Eryn signed a confidentiality agreement that precluded the introduction of such evidence.  Additionally, if the mediator's testimony were considered, the circuit court's finding that the parties did not mutually assent to selling their home without paying realtor fees still would not be clearly erroneous.  And in any event, Eryn cannot rely on the purported oral agreement of March 9, 2017, to modify the written agreement of April 15, 2017.

[¶20.]     We affirm.  Weston's request for appellate attorney's fees is granted in the amount of $10,400.

[¶21.]     ZINTER, SEVERSON, KERN, and JENSEN, Justices, concur.